# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael J. Yencha          :
                          :
         v.                 :
                          :

Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing,      :  No. 1452 C.D. 2017
             Appellant  :  Submitted: April 6, 2018

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON       FILED: May 31, 2018

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of Westmoreland County (trial court), which sustained the appeal of Michael J. Yencha (Yencha) and reversed DOT's one-year suspension of his driver's license. DOT imposed the suspension because Yencha refused to submit to a chemical test following his arrest for driving under the influence pursuant to Section 1547 of the Vehicle Code, 75 Pa. C.S. § 1547, commonly referred to as the Implied Consent Law.[1] The trial court reversed

---

[1] The Implied Consent Law provides, in pertinent part, that:

**(a) General rule.**-- Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose

Yencha's suspension concluding that DOT did not present sufficient evidence to meet its burden of proving the arresting officer had reasonable grounds to believe Yencha had been driving while under the influence of alcohol. We reverse.

At the trial court hearing on this matter, DOT presented the testimony of Officer Justin M. Scalzo (Officer Scalzo) of the Greensburg Police Department. While Yencha attended the hearing and was represented by counsel, he did not testify and no other witnesses were presented by Yencha or DOT. Transcript of Proceedings (T.), 9/22/17, at 5-6.

Officer Scalzo testified that on January 18, 2017, while on duty, he received a call to respond to a hit-and-run accident at the intersection of Arch Avenue and East Otterman Street. *Id.* at 6. Officer Scalzo arrived at the scene and spoke with the victim, Constance Clingerman (Clingerman). *Id.* Clingerman told Officer Scalzo that she was traveling northbound on Arch Avenue, and she stopped at a red light at the intersection of Arch Avenue and East Otterman Street. *Id.* While

---

of determining the alcoholic content of blood or the presence of a controlled substance *if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle* . . . in violation of section . . . 3802 (relating to driving under the influence of alcohol or controlled substance).

. . .

**(b) Suspension for refusal.**--

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows . . . for a period of 12 months.

75 Pa. C.S. § 1547 (a), (b)(1)(i). The General Assembly made some amendments to this provision effective July 20, 2017. This version of Section 1547 was in effect at the time of Yencha's arrest and suspension.

2

stopped, Clingerman noticed "a dark colored SUV-type vehicle travelling at a higher rate of speed" that caught her attention and subsequently struck her vehicle. *Id.*

Clingerman told Officer Scalzo that she exited her vehicle to speak with the driver to obtain insurance information and to report the accident to the police. *Id.* Clingerman reported that the driver who struck her vehicle got back into his vehicle and fled the scene. *Id.* at 7. Clingerman stated that once the vehicle left the scene, it travelled northbound on Arch Avenue. *Id.* at 8. Officer Scalzo examined Clingerman's vehicle and saw damage to the rear bumper. *Id.* at 7. Although Clingerman did not obtain any driver information, she described the driver as a "white male with brownish colored hair." *Id.*

As Officer Scalzo was interviewing Clingerman, another witness to the accident, Shane McBride (McBride), approached him and provided additional information regarding the accident. *Id.* at 7. McBride told Officer Scalzo that he was travelling southbound on Arch Avenue and saw a dark colored SUV travelling on Arch strike Clingerman's vehicle. *Id.* McBride provided Officer Scalzo with the license plate number of the vehicle that hit Clingerman's vehicle, "Echo, Bravo, November 1561," *i.e.*, EBN 1561. *Id.* at 7-8. With this information, Officer Scalzo had dispatch perform a registration check on the vehicle. *Id.* at 7. Based on the registration check, Officer Scalzo determined that the registered owner was Yencha and that he resided on Underwood Avenue. *Id.* at 7-8.

Officer Scalzo asked other on-duty police officers to check Underwood Avenue and the surrounding area for the vehicle. *Id.* at 8. A short time later, other officers notified Officer Scalzo that they located Yencha's vehicle, which was parked in front of his house on Underwood Avenue. *Id.* About 15 minutes later, Officer Scalzo arrived at Yencha's residence to speak with him. *Id.* When he arrived

3

at the residence, Officer Scalzo noticed a "darker greenish colored Jeep" parked in front of the residence. *Id.* The front end of the Jeep had sustained some damage. *Id.* Officer Scalzo "verified the registration, Echo, Bravo, November 1561, as the same registration [McBride] gave [him] on the scene." *Id.* The vehicle belonged to Yencha. *Id.* By this time, three other officers had already arrived at Yencha's residence and started speaking to Yencha on his front porch. *Id.* at 9.

Officer Scalzo explained to Yencha that he was there to investigate the accident that occurred on Arch Avenue. Yencha denied knowing about any accident. *Id.* Officer Scalzo explained to Yencha that the damage on the front of his vehicle was consistent with the damage on the struck vehicle. *Id.* at 9-10. Yencha responded that his vehicle had been damaged in an earlier accident at the Hill Top Club. *Id.* at 10. During his conversation with Yencha, Officer Scalzo "detected a strong odor of an alcoholic beverage coming from his person, and I also noticed, you know, glassy eyes, slightly slurred speech, all indicative of somebody under the influence of an alcoholic beverage." *Id.* at 9. Officer Scalzo testified that he believed that Yencha was under the influence of alcohol based on his "overall appearance," including the odor of alcohol and Yencha's slurred speech and bloodshot eyes, which, Officer Scalzo explained, as a result of his training and experience, would cause him to conduct standard field sobriety tests in normal suspected driving under the influence situations. *Id.* at 10. Officer Scalzo requested Yencha submit to field sobriety tests, but Yencha refused. *Id.* Officer Scalzo placed Yencha under arrest for "suspicion of driving – [driving under the influence] DUI and being involved in the hit-and-run accident." *Id.* at 11.

Once at the police station, Officer Scalzo asked Yencha to submit to a breath test. *Id.* Initially, Yencha agreed to take the test, but later refused. *Id.* at 11-

4

12. Officer Scalzo read the DL-26 form, which provided the chemical testing refusal warnings, to Yencha verbatim. *Id.* at 13. Officer Scalzo asked Yencha to sign the form to acknowledge that he fully understood what the Officer read to him; Yencha refused to sign the form. *Id.*

On cross-examination, Officer Scalzo admitted that he did not see Yencha drive a vehicle and that none of the witnesses identified Yencha as the driver of the vehicle. *Id.* at 15, 24 & 29. Officer Scalzo admitted that Clingerman never mentioned the driver having "any indication of alcohol." *Id.* at 19-20, 29. Officer Scalzo explained that, "[f]rom my understanding, it wasn't a real long encounter. It was just a brief encounter when [Clingerman] exited her vehicle to ask for insurance." *Id.* at 19.

Once he arrived at Yencha's residence, Officer Scalzo stated that he checked the registration and observed damage to the front of the Jeep that would be consistent with the damage done to Clingerman's vehicle. *Id.* at 22. Although Officer Scalzo did not notice any paint transfer, he observed "dents to the rear of her van and dents to the front of [Yencha's] vehicle, which would show a rear end collision." *Id.* Officer Scalzo did not take the Jeep back to compare it to Clingerman's vehicle to see if the damage coordinated because he allowed Clingerman to leave after he finished interviewing her, as there were no reported injuries at the scene, which is normal in a "hit-and-run or a rear[-]end collision vehicle accident." *Id.* at 20, 23-24.

Officer Scalzo testified that approximately 25 minutes lapsed from when he arrived on the accident scene until he spoke with Yencha on his porch and

5

observed his state of intoxication.[2] *Id.* at 24, 29-30. Officer Scalzo stated that he did not know whether Yencha consumed any alcohol at his house. *Id.* at 25-26.

On re-direct examination, Officer Scalzo explained why he thought Yencha was the driver of the vehicle involved in the hit-and-run accident:

> Well, a couple of things, I guess, based off of, and again, it was a vague description, but a white male with brownish colored hair that fit Mr. Yencha when I spoke with him, accompanied with the fact that there was a plate, a registration plate, registered to Mr. Yencha. He was the sole person at his residence at the time, and then putting [the] time frame together, as I have noted in my report, when he had stated to me what time he arrived home, put me in the time frame of when the accident occurred, when I got there, and then speaking with him all, kind of, coincided.

*Id.* at 27. Further, Yencha told Officer Scalzo that he had been drinking earlier in the night, at the Hill Top Club and then the Six Club. *Id.* at 27. Yencha said that "he drove home and arrived home a half an hour ago and … that he was the only one in the car." *Id.* at 27-28.

Based on Officer Scalzo's testimony, the trial court sustained Yencha's appeal. T. at 38; Trial Court Order, 9/22/17. The trial court explained its decision as follows:

> The sole issue presented is whether, at the time of the arrest, Greensburg Police Officer Scalzo had reasonable grounds to believe that the [Yencha] was operating his vehicle while under the influence of alcohol. *[DOT]*

---

[2] Officer Scalzo testified that he arrived on the scene of the accident approximately 6-10 minutes after the call came into dispatch. T. at 16-17. Officer Scalzo spent approximately 10 minutes at the scene interviewing the witnesses and examining the damage to the vehicle before he arrived at Yencha's residence. *Id.* at 17.

> *presented no direct evidence regarding either who was operating the vehicle, or the condition of such operator at the time of the alleged incident of a rear-end collision.*

Trial Court Order, 12/1/17 (emphasis added).[3] The trial court further provided:

> I admitted information from the operator [C]lingerman and the passerby for the purpose of determining Officer Scalzo's state-of-mind as to the reasonableness of his grounds for requesting chemical testing. Based on these facts, I found the grounds for [the] chemical request to be unsupported by credible evidence. Even when asked why he believed [Yencha] was the operator of the vehicle and presumably under the influence of alcohol at that time, Officer Scalzo stated it "all, kind of, coincided."

---

[3] To support its conclusion that DOT did not present sufficient evidence, the trial court found the following facts:

1. That a non-reportable bumper accident occurred at the intersection of Arch and Otterman streets in the City of Greensburg on January 18, 2017.
2. That, [C]lingerman, one of the parties involved in the alleged accident did not obtain any driver information at the scene, did not identify the other actor except to describe him as a "white male with brownish hair." Nor did she opine as to the operator's state of sobriety.
3. A passerby, McBride, volunteered information to Officer Scalzo of a license number belonging to the Petitioner's vehicle. No other evidence was obtained concerning the identification of the operator or whether or not he appeared to be under the influence of alcohol.
4. Approximately 25 minutes after the alleged occurrence, Officer Scalzo confronted the Petitioner at his home. He stated "that he detected a strong odor of an alcoholic beverage coming from his person, and noticed, you know, glassy eyes and slightly slurred speech." (T.9 Line 16-20). These observations were made without any knowledge of whether or not the Petitioner had consumed alcohol at his home.
5. Officer Scalzo made no further investigation regarding vehicle damage or the identity of the operator.

Trial Court Order, 12/1/17, at 1-2, Findings of Fact (F.F.) Nos. 1-5.

*Id.* at 2. DOT appealed the trial court's decision to this Court.[4]

It is well established that DOT must prove the following to sustain a one-year driver's license suspension under the Implied Consent Law: the licensee (1) was arrested for driving under the influence by a police officer *who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol*; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that a refusal would result in the suspension of his driver's license. *Marnik v. Dep't of Transp., Bureau of Driver Licensing*, 145 A.3d 208, 212 (Pa. Cmwlth. 2016).

On appeal,[5] DOT contends that the trial court erred as a matter of law when it held that it did not meet its burden under the first prong.[6] DOT contends that Officer Scalzo's testimony sufficiently established that he had reasonable grounds to believe that Yencha operated the vehicle while intoxicated. Officer Scalzo testified that he relied on the statements made by the witnesses to the hit-and-run accident, observed Yencha's obvious intoxication, and Yencha admitted that he had been driving 30 minutes before Officer Scalzo encountered him on his porch. DOT's Brief at 12. We agree that the trial court erred because it did not view Officer

---

[4] This Court's review in a license suspension case is limited to determining whether there has been a violation of a constitutional right or error of law or whether findings of fact are supported by substantial evidence. *Dep't of Transp., Bureau of Driver Licensing v. Mulholland*, 527 A.2d 1123, 1124, n.2 (Pa. Cmwlth. 1987).

[5] This Court only has the arguments presented by DOT to consider because, by order dated April 2, 2018, this Court barred Yencha from filing a brief or participating in oral argument due to his failure to comply with this Court's February 28, 2017 order directing him to file a brief within 14 days.

[6] We note that the only issue before the trial court, and this Court, is whether DOT met the first prong of the test. T. at 34, 37; Trial Court Order, 12/1/17, at 1. The trial court judge acknowledged that there was no issue with the warnings, *id.*, nor did Yencha, through counsel at the hearing, challenge the conclusion that he refused to take the chemical test.

8

Scalzo's testimony in light of this Court's recent case law explaining the evidence required for DOT to meet its burden.

The question of whether an officer had reasonable grounds to arrest a licensee is a question of law fully reviewable by this court on a case-by-case basis. *Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 436 (Pa. Cmwlth. 2014); *Marone v. Dep't of Transp., Bureau of Driver Licensing*, 990 A.2d 1187, 1190 (Pa. Cmwlth. 2010). The test for whether a police officer has reasonable grounds to believe that a licensee drove while intoxicated is not demanding; it requires even less proof than what is necessary to establish probable cause for a criminal prosecution. *Hasson v. Dep't of Transp., Bureau of Driver Licensing*, 866 A.2d 1181, 1185-86 (Pa. Cmwlth. 2005); *Helt v. Dep't of Transp., Bureau of Driver Licensing*, 856 A.2d 263, 266 (Pa. Cmwlth. 2004). In assessing whether DOT has met this burden, "we consider the totality of the circumstances and determine, as a matter of law, whether a person in the position of the arresting officer could have reasonably reached this conclusion." *Helt*, 856 A.2d at 266.

An arresting officer need not prove that he was correct in his belief that the licensee was operating the vehicle while under the influence. *Hasson*, 866 A.2d at 1185. Even if later evidence proves the officer's belief to be erroneous, this will not render the reasonable grounds void. *Id.* at 1186. Further, an officer need not witness the licensee operating a vehicle to place him under arrest for driving under the influence. *Walkden*, 103 A.3d at 437. Additionally, an officer's reasonable belief that the licensee was driving while under the influence will justify a request to submit to chemical testing if "one reasonable interpretation of the circumstances" as they appeared at the time supports the officer's belief. *Marnik*, 145 A.3d at 212-13; *Helt*, 856 A.2d at 266. Further, courts appropriately defer to an investigating

9

officer's experience and observations where reasonable grounds exist to support the officer's belief based on the totality of the circumstances. *Hasson*, 866 A.2d at 1186 (noting that "a police officer may rely upon his experience and personal observations to render an opinion as to whether a person is intoxicated"); *Helt*, 856 A.2d at 266 (noting that the officer's observations of the demeanor, appearance, and behavior, of the licensee and witnesses on the night of the incident supported the finding that the trial court erred by substituting its judgment for that of the officer's regarding the inference to be drawn from the officer's observations).

Here, the trial court found Officer Scalzo's testimony to be credible to support its findings. *See Hasson*, 866 A.2d at 1184, n.3 (noting that "[i]t is not necessary for a fact finding tribunal to make express credibility findings where a witness'[s] credibility is not an issue."). The trial court expressly relied on Officer Scalzo's testimony where he relayed the information provided to him by the witnesses, made observations regarding Yencha's condition, and testified that it "all, kind of, coincided" to support its conclusion that DOT did not meet its burden. Trial Court Order, 12/1/17. *See Hasson*, 866 A.2d at 1186 (noting that the trial court implicitly found the officer who testified credible because it credited his account of events).

Although the trial court stated that it found the grounds for requesting the chemical test "unsupported by credible evidence," the trial court made this assertion when suggesting that DOT needed to produce "direct evidence" to support Officer Scalzo's belief that Yencha drove the vehicle while under the influence and then focused its findings on the evidence it deemed missing. Trial Court Order, 12/1/17, at 1-2; F.F. Nos. 1-5. Instead, the trial court should have reviewed Officer Scalzo's testimony to assess whether the officer had "reasonable grounds" to believe

10

that Yencha had been driving while under the influence based on the totality of the circumstances, as required by case law. *Marnik*, 145 A.3d at 212; *Walkden*, 103 A.3d at 436; *Hasson*, 866 A.2d at 1187; and *Helt*, 856 A.2d at 266.

Here, DOT presented evidence that Officer Scalzo had reasonable grounds to believe that Yencha had operated the vehicle, *i.e.*, that he was the driver of the vehicle that rear-ended Clingerman's vehicle. Officer Scalzo testified that Clingerman described the hit-and-run driver as a white male with "brownish colored hair." T. at 7. Yencha is a white male with brownish colored hair. *Id.* at 27. Clingerman and McBride told Officer Scalzo that the vehicle they saw hit Clingerman's vehicle was a "dark colored SUV-type vehicle." *Id.* at 6-7. The vehicle that Officer Scalzo found parked in front of Yencha's residence was a "darker greenish colored Jeep." *Id.* at 8.

Further, McBride provided Officer Scalzo with the license plate number of the vehicle that rear-ended Clingerman's vehicle, EBN 1561, which was the same license plate number of the Jeep that Officer Scalzo found parked in front of Yencha's residence. *Id.* at 8. The Jeep was registered to Yencha. *Id.* Yencha's Jeep had damage to its front end that was consistent with the damage to the rear end of Clingerman's vehicle. *Id.*[7]

DOT also presented evidence that Officer Scalzo had reasonable grounds to believe that Yencha operated the vehicle while under the influence of alcohol. Yencha told Officer Scalzo that he had driven home about a half an hour earlier after visiting the Hill Top Club and the Six Club where he had been

---

[7] The trial court found that Officer Scalzo did not obtain any other evidence from McBride to identify Yencha or to observe whether he appeared to be under the influence while driving. F.F. No. 3. This evidence is not required because the focus of the inquiry is whether Officer Scalzo had reasonable grounds to believe that Yencha drove while under the influence of alcohol given the totality of the circumstances before him at the time.

"drinking." *Id.* at 27. Officer Scalzo testified that Yencha told him that he "drove home and arrived home a half an hour ago and stated that he was the only one in the car." *Id.* at 27-28. When speaking to Yencha, Officer Scalzo detected a strong odor of alcohol coming from his person. *Id.* at 9. Additionally, Yencha's eyes were glassy and his speech was slightly slurred, indicative of someone under the influence of alcohol. *Id.*

The trial court erred by requiring direct evidence that Yencha was driving under the influence. Based on Officer Scalzo's testimony, DOT demonstrated that, at the time he investigated the hit-and-run accident, Officer Scalzo had reasonable grounds to believe that Yencha had operated his vehicle while under the influence of alcohol. Therefore, DOT presented sufficient evidence to uphold the suspension of Yencha's operating privilege. Accordingly, the trial court's order is reversed.

_____
CHRISTINE FIZZANO CANNON, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael J. Yencha                          :
                                           :
        v.                                 :
                                           :
Commonwealth of Pennsylvania,              :
Department of Transportation,              :
Bureau of Driver Licensing,                :    No. 1452 C.D. 2017
                Appellant                  :


O R D E R


AND NOW, this 31st day of May, 2018, the order of the Court of Common Pleas of Westmoreland County dated September 22, 2017 is REVERSED, and the suspension of Michael J. Yencha's operating privilege is REINSTATED.


_____
CHRISTINE FIZZANO CANNON, Judge