IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jason J. Hartmann | : | |
| | : | |
| v. | : | No. 690 C.D. 2019 |
| | : | Submitted: December 6, 2019 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                          FILED: April 8, 2020

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (PennDOT), appeals an order of the Court of Common Pleas of Mercer County (trial court) that sustained the appeal of Jason J. Hartmann (Licensee) of a one-year suspension of his operating privilege for refusing to submit to chemical testing in accordance with Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. §1547(b)(1)(i).[1]  The trial court held the arresting officer did not have reasonable grounds to believe Licensee had been operating his vehicle under the

---

[1] It provides:

> (1) If any person placed under arrest for a violation of section 3802 [prohibiting driving under the influence of alcohol or a controlled substances] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
>
>> (i) Except as set forth in subparagraph (ii) [relating to prior offenses], for a period of 12 months.

75 Pa. C.S. §1547(b)(1)(i).  Section 1547 of the Vehicle Code is commonly referred to as the Implied Consent Law.

influence of alcohol and, thus, sustained Licensee's appeal. Concluding that the evidence established reasonable grounds for Licensee's arrest, we reverse.

On January 7, 2019, PennDOT notified Licensee that his operating privilege would be suspended for one year because he refused to submit to a chemical test at the time of his arrest for driving under the influence of alcohol (DUI).[2] Licensee appealed, and a hearing was conducted by the trial court. Licensee was present and represented by counsel. The sole witness, Pennsylvania State Police Trooper Noah Neigh, was presented by PennDOT.

Trooper Neigh testified that on December 19, 2018, at approximately 11:35 p.m., he and his partner, Trooper Michael Brenot, were on routine patrol when they found an unoccupied vehicle in a ditch on the side of the road. Trooper Neigh checked the vehicle's registration and learned that Licensee was the owner. Because the closest building to the vehicle was a bar, the two troopers went inside to look for the driver of the abandoned vehicle. The bartender stated that Licensee had been drinking alcohol at the bar, unaccompanied, and had left about 15 to 20 minutes before the troopers arrived.

When the troopers returned to Licensee's vehicle, they found that Licensee's father had arrived at the scene with a truck to tow the vehicle out of the ditch. Licensee's father stated that Licensee's mother had been driving the vehicle when a deer ran in front of her. Swerving to avoid it, she drove the vehicle into the

---

[2] Section 3802(a)(1) of the Vehicle Code states:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa. C.S. §3802(a)(1). A test of an individual's blood or breath showing an alcohol content of at least 0.08%, taken within two hours of operation of a vehicle, establishes impairment. 75 Pa. C.S. §3802(a)(2).

ditch. When Trooper Neigh expressed skepticism about this story, Licensee's father conceded that Licensee had been the one driving and that he had "been drinking." Notes of Testimony, 5/3/2019, at 10 (N.T. \_\_); Reproduced Record at 37a (R.R. \_\_).

The troopers drove to Licensee's residence, arriving shortly after midnight. Licensee was not there, and his parents suggested that Licensee may have gone outside to walk. The troopers searched and found Licensee in the woods behind the house. Licensee was disheveled and barefoot; unsteady on his feet; and smelled of alcohol.

After assisting Licensee back to his house and getting him shoes, Trooper Neigh had Licensee undergo field sobriety tests, which Licensee failed. A breath test showed a blood alcohol level of 0.201%. Licensee was arrested for suspicion of DUI. Trooper Neigh read Licensee the Implied Consent Law warnings, and Licensee agreed to submit to a blood draw. The troopers transported him to a medical center, arriving at approximately 1:00 a.m. At the medical center, Licensee withdrew his consent to the blood draw.

The troopers then transported Licensee to the police barracks. Trooper Neigh asked Licensee if "he was the one driving." N.T. 17; R.R. 44a. Licensee stated that his mother had been driving and "she hit black ice and she crashed." N.T. 17; R.R. 44a. Trooper Neigh testified that Licensee's mother had told him that she had not driven the vehicle that evening. When Licensee's parents arrived at the police barracks, Trooper Neigh again put this question to Licensee's mother and, again, she denied driving the vehicle that evening.

The trial court concluded that the evidence did not establish reasonable grounds for Licensee's arrest. The trial court explained this conclusion as follows:

Trooper [Neigh], you didn't do anything wrong.

3

[Licensee], this is your lucky day. Someone should have asked you, were you driving the vehicle. They have to have a reasonable suspicion. I am making it a finding of fact that there was not reasonable suspicion, even though you were running around in the woods in your bare feet in 25 degree weather.

But I think that this, in particular, is a very important matter, a license suspension for a year. And, again, I am just making it a finding of fact that there was not reasonable … grounds, because the trooper was with you for a considerable period of time under circumstances such as in the woods, doing sobriety tests, at the hospital, et cetera, where the question should have been asked, and you had the right to say no, but you never even had the opportunity to say no.

N.T. 26-27; R.R. 53a-54a. The trial court sustained Licensee's appeal, and PennDOT appealed.

On appeal,[3] PennDOT argues the trial court erred. It contends that the evidence established that Trooper Neigh had reasonable grounds to arrest Licensee for a DUI offense.

To sustain a suspension of operating privileges under Section 1547(b) of the Vehicle Code, PennDOT has the burden of proving the following elements:

(1) a police officer arrested a licensee based upon *reasonable grounds* to believe that the licensee was driving under the influence of alcohol; (2) the officer asked the licensee to submit to chemical testing; (3) the licensee refused to submit to such testing; and (4) the officer provided a warning to the licensee that his failure to submit to testing would result in the suspension of his license.

---

[3] Our review determines whether the trial court's findings are supported by substantial evidence, whether errors of law have been committed and whether the trial court's determinations demonstrate an abuse of discretion. *Finnegan v. Department of Transportation, Bureau of Driver Licensing*, 844 A.2d 645, 647 n.3 (Pa. Cmwlth. 2004).

*Demarchis v. Department of Transportation, Bureau of Driver Licensing*, 999 A.2d 639, 641 (Pa. Cmwlth. 2010) (emphasis in original). Here the only issue is whether Trooper Neigh had reasonable grounds to believe Licensee was operating the vehicle under the influence of alcohol. This is a question of law, and this Court reviews the issue "in a plenary fashion and on a case-by-case basis." *Id*. at 642.

"Reasonable grounds" to arrest falls short of probable cause. We have explained the reasonable grounds standard as follows:

> The standard of reasonable grounds to support a license suspension is a lesser standard than the probable cause standard needed to support a DUI conviction…. The standard is not a demanding one…. Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of an intoxicating substance…. *This is determined by examining the totality of the evidence*, including the location of the vehicle, whether the engine was running, whether there was evidence that the licensee had driven the vehicle before the arrival of the police, the licensee's general appearance, and the licensee's behavior…. Reasonable grounds do not require that other possible explanations or inferences that the officer could have made be unreasonable….

*Marone v. Department of Transportation, Bureau of Driver Licensing*, 990 A.2d 1187, 1190 (Pa. Cmwlth. 2010) (emphasis added; internal citations omitted). Even where an arresting officer's belief that the licensee was driving under the influence of alcohol is later determined "to be erroneous, this will not render the reasonable grounds void." *Yencha v. Department of Transportation, Bureau of Driver Licensing*, 187 A.3d 1038, 1044-45 (Pa. Cmwlth. 2018). Nor must the arresting officer "witness the licensee" driving. *Id*. at 1045. The arresting officer's belief that the licensee was driving while impaired is justified "if 'one reasonable interpretation

of the circumstances' as they appeared at the time supports the officer's belief." *Id.* (quoting *Marnik v. Department of Transportation, Bureau of Driver Licensing*, 145 A.3d 208, 213 (Pa. Cmwlth. 2016)).

PennDOT argues that the trial court did not consider "the totality of the evidence" as required and, instead, substituted its inferences for those drawn by the officer from the circumstances. The trial court held that Trooper Neigh's failure to ask Licensee if he had been driving was a fatal oversight. PennDOT argues that the question was not necessary where, as here, the totality of the circumstances showed that Licensee was driving the vehicle.

Licensee responds that Trooper Neigh's testimony did not establish that reasonable grounds existed to believe Licensee was driving under the influence of alcohol. Licensee contends that Trooper Neigh's conversations with third parties were hearsay and entitled to no weight. Licensee also contends that being found intoxicated in the woods behind his parents' house, an hour after the troopers discovered the vehicle in a ditch, did not establish he was the driver.

An out-of-court statement can be admissible to establish "the state of mind of the police officer hearing the statement or explaining the reason for the conduct of the police officer in response to hearing this statement." *Patterson v. Commonwealth*, 587 A.2d 897, 901 (Pa. Cmwlth. 1991). The statements are not hearsay because they are not offered to prove the truth of the statement. Rather, they are offered only to prove that the statement was made. *Duffy v. Department of Transportation, Bureau of Diver Licensing*, 694 A.2d 6, 9 (Pa. Cmwlth. 1997). Where the statement is offered to show the police officer's "reasonable belief that [the licensee] had been driving," the statement is not hearsay and is admissible. *Id.*

6

We turn, then, to PennDOT's challenge to the trial court's order. In its Pennsylvania Rule of Appellate Procedure 1925(a) opinion, Pa. R.A.P. 1925(a), the trial court explained that the accident scene did not show driver intoxication. The troopers did not ask the bartender how much Licensee had to drink or if he had been intoxicated. The statements made by Licensee's father did not establish that Licensee had been driving under the influence because the father did not see Licensee operate the car. Further, the troopers did not ask Licensee's father whether his son was intoxicated when he arrived at his house. Theoretically, Licensee could have started drinking after the vehicle landed in the ditch. Finally, Trooper Neigh did not ask Licensee if he was driving the vehicle when it went into the ditch. Because Licensee was never asked if he drove the vehicle on the night in question, the trial court held that Trooper Neigh's testimony did not establish that Trooper Neigh had a reasonable belief that Licensee had been operating the vehicle under the influence of alcohol.

The trial court overlooked the fact that Trooper Neigh testified that Licensee's parents stated that Licensee "wasn't drinking at the residence." N.T. 24; R.R. 51a. Further, in *Swyers v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 292 C.D. 2018, filed September 10, 2018),[4] this Court explained that once the trial court accepts the arresting officer's testimony as credible, it cannot substitute its own judgment as to the inferences the officer should have drawn therefrom. Instead, the trial court must "evaluate the totality of the circumstances described by [the arresting officer] to determine whether, as a matter of law, a person in his position could have reasonably concluded that Licensee had operated [his] vehicle while under the influence of alcohol." *Id.*, slip op. at 6.

---

[4] Unreported opinions of this Court, issued after January 15, 2008, may be cited for persuasive value, but do not constitute binding precedent. Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code §69.414(a).

7

Here, Trooper Neigh and his partner found Licensee's vehicle in a ditch near a bar and quickly learned that Licensee had been in a nearby bar drinking alone about 15 to 20 minutes before the troopers arrived on the scene. Returning to the vehicle, they encountered Licensee's father who conceded that Licensee had been the driver; had been drinking; and was back at the house. When the troopers arrived at the house shortly after midnight, Licensee's mother stated she had not been driving the vehicle that evening. Both parents stated Licensee had not been drinking at the house. Fifteen minutes later, the troopers found Licensee in the woods, barefoot, stumbling and smelling of alcohol. Licensee failed field sobriety tests, and his preliminary breath test yielded a 0.201% reading.[5] Licensee was transported to a medical center, arriving at 1:00 a.m. This recital amply supports Trooper Neigh's reasonable conclusion that Licensee was driving the vehicle, found in a ditch, under the influence of alcohol.

Based on the foregoing discussion, we reverse the trial court's order and reinstate Licensee's one-year suspension of his operating privilege.

_____

Mary Hannah Leavitt, President Judge

---

[5] Where a licensee is not found at the accident scene, the arresting officer must establish "a timeframe between the [licensee's] operation of the car and subsequent arrest…." *Demarchis*, 999 A.2d at 643 (quoting *Stahr v. Department of Transportation, Bureau of Driver Licensing*, 969 A.2d 37, 40 (Pa. Cmwlth. 2009)) (emphasis omitted). Trooper Neigh established a clear timeline of the events, from the accident scene to Licensee's arrest at the residence. His testimony established that the troopers entered the bar at 11:45 p.m. and learned Licensee had been there 15 to 20 minutes earlier, drinking alcohol. Father arrived at the accident scene 10 minutes later, planning to tow the vehicle for Licensee. By 12:16 a.m., the troopers arrived at the residence and began their search for Licensee. By 1:00 a.m., they arrived at the medical center with Licensee.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason J. Hartmann           :
                                :
          v.              :   No. 690 C.D. 2019
                                :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Driver Licensing,      :
               Appellant   :

# **O R D E R**

AND NOW, this 8th day of April, 2020, the order of the Court of Common Pleas of Mercer County, dated May 3, 2019 is hereby REVERSED and the Department of Transportation, Bureau of Driver Licensing's, one-year suspension of Jason J. Hartmann's driving privilege is REINSTATED.

_____
Mary Hannah Leavitt, President Judge