IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Peter Parrish,　　　　　　　:
　　　　　　　Appellant　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
Commonwealth of Pennsylvania,　 :
Department of Transportation,　　 :　No. 464 C.D. 2023
Bureau of Driver Licensing　　　　:　Submitted: June 6, 2024

BEFORE:　　HONORABLE CHRISTINE FIZZANO CANNON, Judge
　　　　　　HONORABLE LORI A. DUMAS, Judge
　　　　　　HONORABLE STACY WALLACE, Judge


OPINION
BY JUDGE FIZZANO CANNON　　　　　　　　　　FILED: July 8, 2024


　　　　　John Peter Parrish (Licensee) appeals from the May 2, 2023 order of the Court of Common Pleas of Montgomery County (Trial Court) that dismissed Licensee's statutory appeal from a 12-month driver's license suspension imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT), pursuant to what is commonly known as the Vehicle Code's Implied Consent Law, 75 Pa. C.S. § 1547(b) (Implied Consent Law), as a result of Licensee's refusal to submit to chemical testing upon his arrest for driving under the influence of alcohol or a controlled substance (DUI).[1]　Upon review, we affirm.

　　　　　Montgomery Township Police arrested Licensee for suspicion of DUI on February 22, 2020.　See Trial Court Opinion dated June 9, 2023 (Trial Court Opinion) at 1-3.　Thereafter, on March 6, 2020, DOT notified Licensee that, as a

---

[1] 75 Pa. C.S. § 3802.

result of his refusal to submit to chemical testing, his driving privilege would be suspended for a period of 12 months. *See* License Suspension Notification mailed March 6, 2020, Reproduced Record (R.R.) at 30a-33a. Licensee appealed the suspension. The Trial Court conducted a hearing on April 11, 2023, and dismissed the appeal by order dated May 2, 2023. Licensee timely appealed to this Court.[2]

Licensee raises one claim on appeal before this Court: that the Trial Court erred by determining that the police had reasonable grounds to believe that Licensee was operating a motor vehicle under the influence of alcohol, so as to allow the police to request that Licensee submit to chemical testing. *See* Licensee's Brief at 4 & 9-11. Licensee argues that the police officer's reliance on the statement of a neighbor that Licensee was drunk was insufficient to indicate intoxication and that other indicia of alcohol consumption were lacking. *See id.* at 10-11. Licensee is not entitled to relief.

Initially, we note:

> To sustain a license suspension under [the Implied Consent Law], DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

---

[2] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing,* 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). Here, Licensee challenges only the Trial Court's determination that the police had reasonable grounds to believe that Licensee was driving while under the influence of alcohol at the time he was arrested for DUI.

"The question of whether an officer had reasonable grounds to arrest a licensee is a question of law fully reviewable by this court on a case-by-case basis." *Yencha v. Dep't of Transp., Bureau of Driver Licensing*, 187 A.3d 1038, 1044 (Pa. Cmwlth. 2018). In assessing whether DOT has met its burden of proving reasonable grounds to believe that a licensee drove while intoxicated, this Court considers the totality of the circumstances to determine, as a matter of law, whether a person in the position of the arresting officer could reasonably have reached this conclusion. *See Yencha*, 187 A.3d at 1044. As the Court has explained,

> [a]n officer has reasonable grounds to believe an individual was operating a motor vehicle under the influence of alcohol if a reasonable person in the position of the police officer, viewing the facts and circumstances as they appeared to the officer at the time, could conclude that the driver drove his car while under the influence of alcohol. The test for determining if reasonable grounds exist is not very demanding. An officer may acquire reasonable grounds to believe that a licensee was driving under the influence of alcohol *at any time* during the course of interaction between the officer and the licensee.

*Kachurak v. Dep't of Transp., Bureau of Driver Licensing*, 913 A.2d 982, 985 (Pa. Cmwlth. 2006) (internal citations and quotation marks omitted); *see also Yencha*, 187 A.3d at 1044. Further,

> [t]he standard of reasonable grounds to support a license suspension does not rise to the level of probable cause required for a criminal prosecution. A driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings. It is axiomatic that the legality of a driver's underlying DUI arrest is irrelevant for purposes of a license suspension proceeding for refusal to submit to chemical testing.

*Kachurak*, 913 A.2d at 985-86 (internal citations omitted); *see also Yencha*, 187 A.3d at 1044 ("The test for whether a police officer has reasonable grounds to believe that a licensee drove while intoxicated is not demanding; it requires even less proof than what is necessary to establish probable cause for a criminal prosecution."). Moreover,

> [a]n arresting officer need not prove that he was correct in his belief that the licensee was operating the vehicle while under the influence. Even if later evidence proves the officer's belief to be erroneous, this will not render the reasonable grounds void. Further, an officer need not witness the licensee operating a vehicle to place him under arrest for driving under the influence. Additionally, an officer's reasonable belief that the licensee was driving while under the influence will justify a request to submit to chemical testing if one reasonable interpretation of the circumstances as they appeared at the time supports the officer's belief. Further, courts appropriately defer to an investigating officer's experience and observations where reasonable grounds exist to support the officer's belief based on the totality of the circumstances.

4

*Yencha*, 187 A.3d at 1044-45 (internal quotation marks and citations omitted).  In addition,

> [t]he only valid inquiry on this issue at the *de novo* hearing is whether, viewing the facts and circumstances as they appeared at the time, a reasonable person in the position of the police officer could have concluded that the motorist was operating the vehicle and under the influence of intoxicating liquor.

*Dep't of Transp., Bureau of Traffic Safety v. Dreisbach*, 363 A.2d 870, 872 (Pa. Cmwlth. 1976) (footnote omitted).

Here, Officer Bins Thomas of the Montgomery Township Police Department testified on behalf of DOT.  *See* Notes of Testimony, April 11, 2023 (N.T.) at 4-19.  Officer Thomas explained that, on February 22, 2020, he responded to a speeding complaint at 7100 Union Court, Montgomery Township, where he was met by complainant Kathleen Beane.  *See* N.T. at 4.  Ms. Beane related that approximately 15 to 20 minutes prior to Officer Thomas's arrival, she observed a gray vehicle later identified as a Lexus IS 300 (the vehicle) speeding down Rolling Hill Drive at an exceptional rate of speed, which she estimated to be at least 40 miles per hour.  *See* N.T. at 4-5, 10.  Ms. Beane explained that, greatly upset, she had left her residence and walked to Colonial Court, where she observed Licensee exiting the vehicle.  *See* N.T. at 5.  She related to Officer Thomas that when she approached Licensee to confront him about his driving, that "he was drunk as could be" and that "he couldn't stand straight."  N.T. at 5 & 16-17.

Officer Thomas further testified that, after speaking with Ms. Beane for approximately 10-15 minutes, he proceeded the short distance to Licensee's

5

residence[3] and there spoke with Licensee. *See* N.T. at 5-6, 11. Licensee admitted that the grey vehicle parked directly in front of his house[4] was his vehicle. *See* N.T. at 6. Licensee also confirmed that he had previously had an interaction with Ms. Beane and stated that Ms. Beane had harassed him about the speed of his vehicle. *See* N.T. at 6. During this interaction, Officer Thomas observed that Licensee's eyes were glassy and bloodshot, his speech was slurred, and his balance was unsteady, requiring Licensee to use his hand against a wall to steady himself. *See* N.T. at 6. Additionally, Licensee admitted to Officer Thomas that he had consumed two or three gin and tonics at lunch with his wife. *See* N.T. at 6. However, while inside Licensee's home, Officer Thomas did not observe any open alcoholic beverages. *See* N.T. at 6. Further, Licensee did not mention to Officer Thomas that he consumed alcoholic beverages upon returning home. *See* N.T. at 6-7 & 17-18.

Based on his observations and those of Ms. Beane, Officer Thomas requested another officer assist him to conduct field sobriety testing of Licensee, which accordingly occurred inside Licensee's residence. *See* N.T. at 6. Licensee voluntarily attempted the requested field sobriety testing, each of which tests Licensee failed.[5] *See* N.T. at 7-8. Based on his observations and Licensee's

---

[3] Officer Thomas explained that Licensee's residence is located on Colonial Court, the next street over from Ms. Beane's residence, and perhaps a two- or three-minute walk therefrom. N.T. at 5.

[4] Officer Thomas stated that Licensee's vehicle was parked normally in front of Licensee's house. *See* N.T. at 17.

[5] Officer Thomas first conducted the horizontal gaze nystagmus test, during which Officer Thomas observed lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and onset of nystagmus prior to 45 degrees relative to both eyes. *See* N.T. at 7. Licensee then failed the walk-and-turn test by being unable to maintain himself in the required stance during the instruction phase of the test. *See* N.T. at 7. Officer Thomas permitted Licensee to put on his

performance on the field sobriety tests, Officer Thomas requested that Licensee submit to a portable breath test (PBT), but Licensee refused. *See* N.T. at 8.

After Licensee failed the field sobriety tests and refused the PBT, Officer Thomas concluded that Licensee was under the influence of alcohol to a degree that rendered him incapable of safe driving. *See* N.T. at 8. Officer Thomas then took Licensee into custody for DUI and placed him in the back seat of the police patrol vehicle. *See* N.T. at 8-9. Once Licensee was in the back of the patrol vehicle, Officer Thomas read him the entire DL-26B Form verbatim and requested that Licensee consent to chemical testing. *See* N.T. at 9-10. After Officer Thomas read the DL-26B Form, Licensee refused to submit to chemical testing by saying "No." *See* N.T. at 9. Licensee also refused to sign the DL-26B Form, as indicated by Officer Thomas's signature on the line of the DL-26B Form designated for such an indication. *See* N.T. at 9-10; *see also* DL-26B Form, R.R. at 34a.

Based on the evidence supplied by Officer Thomas, which the Trial Court found to be credible,[6] the Trial Court concluded as follows in reference to the reasonable grounds upon which Officer Thomas could conclude that Licensee had been operating a motor vehicle while under the influence of alcohol:

---

sneakers to aid with balance, but Licensee was unable to properly put his sneakers on his feet. *See* N.T. at 7. During the testing phase of the walk-and-turn test, Licensee missed the heel-to-toe on all his steps and counted to 10 steps instead of 9, as instructed. *See* N.T. at 7. Licensee made an improper turn during the test and then again counted improperly and missed all the heel-to-toes on the return steps. *See* N.T. at 7-8. The third test was the one-leg test, which Licensee failed by dropping his foot to the ground six times and failing to look directly at his feet and keep his arms at his side as instructed. *See* N.T. at 8. Officer Thomas ultimately ended the testing early out of concern that Licensee might injure himself due to his unsteady balance. *See* N.T. at 8.

[6] *See* Trial Court Opinion at 4.

[Licensee] was seen speeding through his neighborhood streets, and was confronted by his neighbor who said he was as drunk as could be. After receiving the call the Officer promptly responded to the scene and after a brief conversation with the [c]omplainant he proceeded to [Licensee's] residence which was nearby and reached it in two to three minutes. Officer Thomas conducted multiple sobriety tests and determined [Licensee] had operated his vehicle while under the influence of alcohol resulting in arrest.

. . . .

Clearly based on the information received from the complainant, the Officer's observations, and the failed field sobriety tests Officer Thomas had a reasonable basis to conclude that [Licensee] had operated a motor vehicle under the influence of alcohol.

Trial Court Opinion at 3-4 (internal record citations omitted).

We find no error with the Trial Court's findings and determinations. Licensee was observed driving erratically, appeared drunk to a neighbor, and presented with glassy and bloodshot eyes, slurred speech, and unsteady balance before the investigating police officer. He admitted to consuming alcohol and then proceeded to fail every field sobriety test administered. Officer Thomas's observations in conjunction with Ms. Beane's observations, as described above, therefore provided reasonable grounds for Officer Thomas to believe that Licensee was operating his vehicle under the influence of alcohol and to arrest Licensee based on that suspicion. *See Yencha*; *Kachurak*; *Dreisbach*. Licensee's arrest for suspected DUI then warranted Officer Thomas's request that Licensee submit to chemical testing pursuant to the Implied Consent Law, which request Officer Thomas accordingly made and Licensee refused, despite having been warned of the

8

consequences of such a refusal. *See* 75 Pa. C.S. § 1547(b). Accordingly, DOT met each element of its burden of proving its case, and the Trial Court appropriately denied Licensee's statutory appeal.

Licensee's argument that Ms. Beane did not detect an odor of alcohol on Licensee's breath does not change this result. *See* Licensee's Br. at 11. As this Court has explained:

> The presence or absence of an odor of alcohol about a motorist is not the only test of whether there was reasonable ground to believe that the driver was under the influence of drink. It is the driver's behavior and appearance, as observed by the arresting officer, which are to be considered.

*Corry v. Commonwealth*, 429 A.2d 1229, 1230 (Pa. Cmwlth. 1981) (finding that an officer's observations regarding a driver's uneven stance, his staggering gait, and his combativeness sufficed to form a reasonable belief that the driver was under the influence of alcohol, even in the absence of testimony regarding an odor of alcohol); *see also Bruno v. Dep't of Transp.*, 422 A.2d 217, 219 (Pa. Cmwlth. 1980) ("The mere absence of an odor of alcohol is insufficient to minimize the arresting officer's other observations as established by the record . . . .").

Likewise, Licensee's suggestion that his slurred speech and instability could have been caused by something other than intoxication, or that such intoxication could have resulted from alcohol consumed after exiting his vehicle, but before the police arrived, affords him no relief. *See* Licensee's Br. at 11. While the passage of time between Ms. Beane's observation of the gray vehicle and Officer Thomas's request that Licensee submit to chemical testing and/or the fact that Licensee's instability as observed by Ms. Beane could have been caused by

something other than intoxication may provide Licensee with colorable – and perhaps even successful – defenses to DUI in a criminal prosecution, such arguments do not negate the reasonableness of Officer Thomas's suspicion at the time of his observations and conclusion that Licensee was intoxicated for arrest/Implied Consent Law purposes. *See Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999) ("Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor."); *Bruno*, 422 A.2d at 219 ("The fact that there may actually be some other explanation of defendant's conduct is not material."); *Yencha*, 187 A.3d at 1044 (observing that courts review the totality of the circumstances at the time of an arresting officer's observations to determine, as a matter of law, whether a person in the position of the arresting officer could have reasonably reached the officer's conclusion regarding intoxication and that even if later evidence proves the officer's belief to be erroneous, reasonable grounds are not then rendered void).

Finally, Licensee's reliance on *Fierst v. Commonwealth*, 539 A.2d 1389 (Pa. Cmwlth. 1988), to argue that the elapsed time between Licensee's driving and Officer Thomas's investigation prevented Officer Thomas from having reasonable grounds to believe that Licensee was driving under the influence of alcohol[7] is likewise misplaced, as *Fierst* is distinguishable on the facts. In *Fierst*, this Court determined that where police discovered a driver actively drinking alcohol at home an hour after the accident they were investigating, the police could not have reasonably concluded that there were reasonable grounds to believe that while

---

[7] *See* Licensee's Br. at 10.

driving, the driver had been under the influence of alcohol. *See Fierst*, 539 A.2d at 1390. The instant matter, on the other hand, involves a complete lack of any evidence indicating that Licensee had been consuming alcohol in the period between Ms. Beane and Officer Thomas's observations, which were only 25 to 35 minutes apart. Thus, this case presents a fundamentally different fact pattern from that in *Fierst*, which is accordingly inapposite.

For these reasons, we find no error in the Trial Court's dismissal of Licensee's statutory appeal challenging his driver's license suspension. Accordingly, we affirm.

_____

CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Peter Parrish,                          :
                          Appellant          :
                                             :
              v.                             :
                                             :
Commonwealth of Pennsylvania,                :
Department of Transportation,                :      No. 464 C.D. 2023
Bureau of Driver Licensing                   :

# **O R D E R**

AND NOW, this 8th day of July, 2024, the May 2, 2023 order of the Court of Common Pleas of Montgomery County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge