986 A.2d 895 (2009)
Robert STANCAVAGE
v.
COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Bureau of Driver Licensing, Appellant.
No. 127 C.D. 2009
Commonwealth Court of Pennsylvania.
Submitted September 25, 2009.
Decided November 17, 2009.
*896 Terrance M. Edwards, Asst. Counsel and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.
Andrew B. Zelonis, Barnesville, for appellee.
BEFORE: COHN JUBELIRER, Judge, and BUTLER, Judge, and FRIEDMAN, Senior Judge.
OPINION BY Judge BUTLER.
The Pennsylvania Department of Transportation, Bureau of Driver Licensing (PennDOT) appeals the January 9, 2009 order of the Court of Common Pleas of Schuylkill County (trial court) reinstating the operating privileges of Robert Stancavage (Stancavage). The only issue in this case is whether the arresting officer had reasonable grounds to believe that Stancavage was under the influence of alcohol or a controlled substance while operating his vehicle on February 21, 2008, in violation of Section 3802 of the Vehicle Code.[1] For the reasons that follow, we affirm the trial court.
Stancavage was driving with a passenger on February 21, 2008 when he was pulled over by West Penn Township Chief of Police, Brian Johnson (Chief Johnson), allegedly for speeding and following too closely behind another vehicle. While the record contains no details regarding Stancavage's alleged following too closely, he was accused of driving sixty-two miles per hour where the speed limit was forty-five miles per hour. After being stopped, Stancavage produced his driver's license and registration upon request. Chief Johnson testified that as Stancavage was handing him the information, the Chief noticed that his eyes were glassy, but that there was no smell of alcohol emitting from him.
Chief Johnson asked Stancavage to step out of the vehicle, and take a series of field sobriety tests. While Chief Johnson testified that Stancavage failed all three field sobriety tests administered, Stancavage testified that he did not believe he failed any of the tests. Specifically, Chief Johnson cited as Stancavage's failures: (1) his failure to keep his head still and keep his eyes from "jerking or jumping" during a horizontal gaze nystagmus (HGN) test;[2] (2) failing to count and turn as instructed during a heel to toe walk; and (3) failing to stand on one leg until the officer told him *897 to stop. Reproduced Record (R.R.) at 20a-21a. Stancavage explained that the testing surface was beveled and that the officer did not properly instruct him as to how to complete the tests. R.R. at 33a.
Chief Johnson further testified that Stancavage consented to a search of his car. Both Chief Johnson and a K-9 unit searched the car. The K-9 unit detected the possible presence of a controlled substance on the vehicle, but Chief Johnson's subsequent search produced no controlled substances.
Chief Johnson arrested Stancavage for driving under the influence of alcohol or controlled substances (DUI) and took him to the local hospital for a blood alcohol content reading. Chief Johnson read the Implied Consent warnings to Stancavage, and Stancavage signed Form DL-26.[3] Stancavage testified that he refused the chemical test because he was angry at being pushed too far and that he was "clearly not intoxicated." R.R. at 34a.
Ultimately, no charges were filed against Stancavage for DUI or possession of controlled substances. Stancavage was not cited for speeding, not cited for following too closely, and not cited for any other traffic violation.
Thereafter, however, Stancavage received notice that his operating privileges were suspended for one year, effective July 23, 2008, for refusal to submit to chemical testing in violation of Section 1547 of the Vehicle Code.[4] On July 17, 2008, Stancavage filed a timely appeal, and a hearing was held before the trial court on January 8, 2009.[5] The trial court determined that Chief Johnson did not have reasonable grounds to arrest Stancavage for DUI, sustained Stancavage's appeal, and reinstated his operating privileges. Specifically, the trial court found Stancavage to be credible, and concluded:
The sole issue is whether the officer had "reasonable grounds" to demand [a chemical] test. The Trial Court does not believe that he did. Speeding or following too closely is not an indicatior of intoxication. Many motorists do so who are not under the influence of intoxicants.... [T]here is no evidence that Defendant attempted to evade the traffic stop or flee from the area. Glossy eyes are an indicator of intoxication but also of many other conditions. There was no odor of alcohol present. There were no controlled substances. Defendant permitted the officer to search his vehicle and himself. The girlfriend was searched. No controlled substances were found on her person. The officer's testimony about Defendant's failure to "pass" the field sobriety tests was weak and unconvincing in that he could not remember exactly the extent of Defendant's failure. There was no evidence that Defendant staggered, swayed, fell down, or had to hold onto anything in ambulating and/or performing the maneuvers. There was no slurred speech, no unruly behavior. Although the dog "hit" on the vehicle, the subsequent search thereof revealed the absence of any controlled substances. There was no testimony that Defendant had any difficulty producing the cards requested of him. Curiously, he was never *898 charged with the offenses for which he was stopped.... [T]he Trial Court does not believe that Defendant's "glossy eyes", the drug dog's "hit" (which proved to be misplaced), and the equivocal testimony about Defendant's alleged "failure" of field sobriety tests constitutes "reasonable grounds" for him to be detained for a blood test.
R.R. at 61a. PennDOT appealed to this Court.[6]
Section 1547(b) of the Vehicle Code states that if a person arrested for violating Section 3802 of the Vehicle Code (relating to driving under the influence of alcohol or a controlled substance) refuses to submit to a chemical test, PennDOT will suspend his operating privileges for 12 months, or for 18 months if the person has previously refused chemical testing or had a prior suspension of his operating privileges under Section 1547 of the Vehicle Code. 75 Pa.C.S. § 1547(b)(1). If the suspension is appealed, PennDOT must establish that the person:
(1) was arrested for [DUI] by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension.
Banner v. Dep't of Transp., Bureau of Driver Licensing, 558 Pa. 439, 445, 737 A.2d 1203, 1206 (1999) (emphasis added). In the present case, there is no dispute that Stancavage was asked to submit to a chemical test, refused to do so, and was properly warned of the consequences of his refusal. Thus, as stated by the trial court below, the only issue remaining is whether the police officer had reasonable grounds to believe that the licensee was under the influence while operating a vehicle.
Whether evidence is sufficient to constitute `reasonable grounds' can only be decided on a case-by-case basis. The test, however, is not very demanding. We not[e] initially that, for `reasonable grounds' to exist, the police officer obviously need not be correct in his belief that the motorist had been driving while intoxicated. We are dealing here with the authority to request a person to submit to a chemical test and not with the admission into evidence of the result of such a test. The only valid inquiry on this issue at the de novo hearing is whether, viewing the facts and circumstances as they appeared at the time, a reasonable person in the position of the police officer could have concluded that the motorist was operating the vehicle and under the influence of intoxicating liquor [or controlled substance].... At trial, the only relevant factual defense would be a showing that the motorist's behavior was not, in fact, as the officer testified. It would then be for the trial court to resolve issues of credibility.
Dep't of Transp., Bureau of Traffic Safety v. Dreisbach, 26 Pa.Cmwlth. 201, 363 A.2d 870, 872 (1976) (footnotes omitted).
In the present case, PennDOT argues that the reasonable grounds for arrest included Stancavage's traffic violations, i.e., speeding and following too closely, glassy eyes, failure to complete three field sobriety tests, and a "hit" on his car by a drug-sniffing dog, and that the court must consider the totality of *899 circumstances when analyzing these grounds. See Riley v. Dep't of Transp., Bureau of Driver Licensing, 946 A.2d 1115 (Pa.Cmwlth.2008).
While there is no set list of behaviors that a person must exhibit for an officer to have reasonable grounds for making an arrest, case law has provided numerous examples of what this Court has accepted as reasonable grounds in the past, e.g., staggering, swaying, falling down, belligerent or uncooperative behavior, slurred speech, and the odor of alcohol. See Riley; Hasson v. Dep't of Transp., Bureau of Driver Licensing, 866 A.2d 1181 (Pa.Cmwlth.2005); Dep't of Transp., Bureau of Driver Licensing v. Terreri, 114 Pa.Cmwlth. 208, 538 A.2d 639 (1988); White v. Commonwealth, 59 Pa.Cmwlth. 156, 428 A.2d 1044 (1981); Corry v. Commonwealth, 59 Pa.Cmwlth. 324, 429 A.2d 1229 (1981); Bruno v. Dep't of Transp., 54 Pa.Cmwlth. 353, 422 A.2d 217 (1980); and Dreisbach. As observed by the trial court, Stancavage exhibited none of these behaviors. In addition, while the police officer initiated his field sobriety tests on the basis of Stancavage's glossy or glassy eyes, the cases where glassy eyes were found as an indicator of intoxication invariably involve at least one other obvious physical condition that would provide reasonable grounds for arrest. See Riley (where "as Licensee exited the vehicle, he had glassy eyes, his speech was slurred, and he bumped into both the officer and the rear quarter panel of the automobile as he walked"); Matthews v. Commonwealth, 115 Pa.Cmwlth. 403, 540 A.2d 349 (1988) (where "[t]he police officer smelled no alcohol on Appellant's breath but noted that his eyes were glassy and at times he was unsteady on his feet and combative"); and White. Clearly then, a showing of glassy eyes alone is insufficient to support the conclusion that an officer had reasonable grounds to believe an individual was intoxicated at a given point in time.
Further, "[d]eterminations as to the credibility of witnesses and the weight assigned to the evidence are solely within the province of the trial court as fact-finder." Reinhart v. Dept. of Transp., Bureau of Driver Licensing, 954 A.2d 761, 765 (Pa.Cmwlth.2008). "As the factfinder, the trial court is free to accept or reject any testimony in whole or in part, subject only to review by this court for an abuse of discretion." DiCola v. Dep't of Transp., Bureau of Driver Licensing, 694 A.2d 398, 400 (Pa.Cmwlth.1997). By determining that Chief Johnson's testimony concerning Stancavage's "failure to `pass' the field sobriety tests was weak and unconvincing," (R.R. at 61a) the trial court rejected much of the evidence that would otherwise be considered in determining whether there were reasonable grounds for belief of intoxication or the influence of a controlled substance.[7] We do not enter upon the trial court's determinations of weight and credibility. We hold that the trial court did not abuse its discretion, given that its determination is supported by the record in that Stancavage was able to engage in the field sobriety tests without slurred speech, staggering, swaying, falling down, et cetera.
*900 Given the totality of all circumstances involved, this Court cannot conclude that the trial court abused its discretion in determining that Chief Johnson did not have reasonable grounds to believe that Stancavage was under the influence of alcohol or controlled substances when operating his vehicle.
For these reasons, we affirm the trial court.

ORDER
AND NOW, this 17th day of November, 2009, the January 9, 2009 order of the Court of Common Pleas of Schuylkill County is affirmed.
DISSENTING OPINION BY Judge COHN JUBELIRER.
I respectfully dissent. The majority concludes that the trial court did not abuse its discretion in granting Stancavage's statutory appeal because: (1) with the exception of glassy or glossy eyes, Stancavage did not exhibit the typical behaviors that this Court has found acceptable as reasonable grounds for believing a licensee is operating a vehicle under the influence;[1] and (2) the trial court made a credibility determination rejecting "much of the evidence that would otherwise be considered in determining whether there were reasonable grounds for belief of intoxication or the influence of a controlled substance" as "weak and unconvincing." Stancavage v. Department of Transportation, Bureau of Driver Licensing, No. 127 C.D. 2009, slip op. at 7 (Pa.Cmwlth. Nov. 17, 2009) (emphasis added).
However, I note that the trial court found Chief Johnson's testimony "weak and unconvincing" because "[Chief Johnson] could not remember exactly the extent of [Stancavage's] failure [of the field sobriety tests]." (Trial Ct. Op. at 4 (emphasis added).) Accordingly, the trial court concluded that "[Stancavage's] `glossy eyes', the drug dog's `hit' (which proved to be misplaced), and the equivocal[[2]] testimony about [Stancavage's] alleged `failure' of field sobriety tests [did not] constitute[] `reasonable grounds' for [Stancavage] to be detained for a blood test." (Trial Ct. Op. at 4 (emphasis added).) The trial court is the finder of fact, and questions of credibility and the weight of the evidence are solely within that trial court's province. Reinhart v. Department of Transportation, Bureau of Driver Licensing, 954 A.2d 761, 765 (Pa.Cmwlth. 2008). "These ... determinations will not be disturbed if supported by substantial evidence." Pollock v. Department of Transportation, Bureau of Driver Licensing, 160 Pa.Cmwlth. 383, 634 A.2d 852, 855 (1993) (emphasis added). A review of Chief Johnson's uncontradicted testimony reveals that, contrary to the trial court's finding, Chief Johnson explained how Stancavage failed each of the field sobriety tests.
*901 Chief Johnson testified that he requested that Stancavage submit to field sobriety tests, including the heel-to-toe walk test, and the one-leg stand test. With respect to the heel-to-toe walk test, Chief Johnson testified that, after he explained the test and demonstrated the test, he had Stancavage perform the test. (Hr'g Tr. at 7, January 8, 2009.) According to Chief Johnson, "[p]art of the test is that you count out as you're stepping, which he failed to do; and when [Stancavage] made his turn, [Stancavage] failed to make the turn as he was instructed to do so." (Hr'g Tr. at 7.) Chief Johnson then testified that he explained the one-leg stance test, requiring the licensee to keep his leg up about ten inches off the ground while counting, and demonstrated the test to Stancavage before asking Stancavage to perform the test. Chief Johnson stated that "[Stancavage] did not make it to the full term. We require at least 30 seconds, and [Stancavage] failed to keep his foot in the air at that time." (Hr'g Tr. at 8.) Chief Johnson did acknowledge that he could not recall exactly how long Stancavage kept his leg in the air. (Hr'g Tr. at 8.) On cross-examination, Chief Johnson reiterated his opinion that Stancavage failed the field sobriety tests. (Hr'g Tr. at 13-14.) Accordingly, Chief Johnson's testimony does not support the trial court's finding that he could not recall the extent of Stancavage's failure of the field sobriety tests, and there is no other evidence in the record that offers support for this finding.
For these reasons, I would vacate the trial court's decision, and remand the matter to the trial court for new credibility determinations. I, therefore, must respectfully dissent.
NOTES
[1] 75 Pa.C.S. § 3802.
[2] In an HGN test, the officer observes the driver's eyes to estimate whether the driver's blood alcohol content exceeds the legal limit by observing: (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation, and (3) onset of the nystagmus at an angle less than 45 degrees in relation to the center point.
[3] Form DL-26 outlines the consequences of refusing to submit to testing of a person's blood alcohol level, and includes the warning that refusal would result in suspension of a person's operating privileges for at least 12 months.
[4] 75 Pa.C.S. § 1547.
[5] Stancavage filed his appeal in Luzerne County, where he lives. PennDOT filed for and received a change of venue because the arrest occurred in Schuylkill County.
[6] This Court's scope of review in a license suspension case is limited to determining whether the trial court's findings of facts are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion. Orloff v. Dept. of Transp., Bureau of Driver Licensing, 912 A.2d 918 (Pa.Cmwlth.2006).
[7] While the trial court made little mention of the HGN test results, other than the conclusion that the officer's overall testimony regarding the field sobriety tests was weak and unconvincing, we note that the Pennsylvania Superior Court has deemed such results to be "scientific evidence" requiring the establishment of adequate foundation through a witness with significant expertise in the area of DUI cases. See Commonwealth v. Stringer, 451 Pa.Super. 180, 678 A.2d 1200 (1996). Without such establishment, the trial court is well with in its discretion to afford little weight to HGN test results.
[1] I.e., staggering, swaying, falling down, belligerent or uncooperative behavior, slurred speech, or the odor of alcohol on the licensee's breath.
[2] Given the context of the trial court's reasoning, I presume that the trial court was not finding Chief Johnson's testimony "equivocal," i.e., incompetent, as a matter of law, but was using "equivocal" as shorthand for not credible. "[T]estimony is equivocal if, after a review of [the witness's] entire testimony, it is found to be merely based on possibilities or is less than positive." Signorini v. Workmen's Compensation Appeal Board (United Parcel Service), 664 A.2d 672, 676 (Pa.Cmwlth. 1995); see also Gombar v. Department of Transportation, Bureau of Driver Licensing, 678 A.2d 843, 850 (Pa.Cmwlth. 1996) (stating that an expert's testimony was equivocal where the expert spoke only in possibilities). Here, Chief Johnson neither spoke in possibilities nor was he less than positive in his testimony regarding Stancavage's failure of the field sobriety tests.