IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arthur Lawrence Green, Jr.,   :
       Appellant  :
           :
  v.        :
           :
Commonwealth of Pennsylvania, :
Department of Transportation,  : No. 1050 C.D. 2023
Bureau of Driver Licensing   : Submitted: October 8, 2024

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
     HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON      FILED: November 14, 2024


   Arthur Lawrence Green, Jr. (Green) appeals from the August 18, 2023, order of the Court of Common Pleas of Union County (trial court), which denied Green's appeal of a one-year suspension of his driver's license by the Department of Transportation, Bureau of Driver Licensing (DOT). Upon review, we affirm.


## I. Factual and Procedural Background

   On September 17, 2021, Pennsylvania State Trooper Tyler Arbogast initiated a traffic stop of a vehicle driven by Green, who refused chemical testing for driving under the influence. Reproduced Record (R.R.) at 44a. On October 15, 2021, the DOT mailed Green a notice stating that based on his refusal to undergo the chemical testing, his driver's license would be suspended for one year beginning on November 19, 2021, pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.

C.S. § 1547(b)(1)(i), commonly referred to as the Implied Consent Law.[1] *Id.* at 8a-10a. Green timely appealed to the trial court, asserting that Trooper Arbogast did not have reasonable grounds to ask him to submit to the chemical testing.[2] *Id.* at 4a-6a.

The trial court held a hearing on August 17, 2023. R.R. at 11a. Green's counsel confirmed that the sole issue was whether Trooper Arbogast had reasonable grounds to request that Green undergo chemical testing. *Id.* at 13a-14a. On the night of the incident at about 11:00 p.m., Trooper Arbogast testified that he observed Green's car slow to about 5-10 miles per hour, fail to stop at a stop sign, then "roll through" the intersection. *Id.* at 16a & 25a. This was a traffic violation, so he activated his patrol car lights and initiated a traffic stop. *Id.* at 16a-17a.

Green stopped his car and Trooper Arbogast approached Green, whom he did not know or recognize, on the car driver's side. R.R. at 16a & 19a. Trooper Arbogast identified himself and told Green why he stopped him; Green, seated in the car, replied "Yeah, I'm excited to get home." *Id.* at 17a. Trooper Arbogast "detected a strong odor of an alcoholic beverage emitting from inside the vehicle" and stated that Green had "glassy, bloodshot eyes and a dazed appearance" that Trooper Arbogast described as "sluggish." *Id.* at 18a-19a. Trooper Arbogast asked Green if he had drunk alcohol before driving and Green stated that "he was coming from his daughter's house in Lewisburg and that she had a keg at the house and that he had a couple beers to drink." *Id.* at 19a. Green's speech was "thick and slurred,"

---

[1] Drivers must submit to the "reasonable condition of an implied consent to chemical testing under pain of civil license suspension following a DUI arrest." *Marchese v. Dep't of Transp., Bureau of Driver Licensing*, 169 A.3d 733, 741 (Pa. Cmwlth. 2017).

[2] The record is limited to Green's license suspension and does not indicate whether this incident resulted in criminal charges or convictions.

so Trooper Arbogast asked Green to step out of the vehicle for field sobriety tests, which Green did. *Id*. Trooper Arbogast stated that he based his decisions during the incident on his personal experience with intoxicated individuals, his training, and his professional experience participating in "thousands of traffic stops" before this one. *Id*. at 19a-20a. He is certified and has been an instructor in conducting field sobriety tests. *Id*. at 22a. He had personally made over 100 DUI arrests since his graduation from the academy in September 2019, about two years before this incident. *Id*. at 15a & 23a.

When Green exited his car for the field sobriety tests, Trooper Arbogast detected "a strong odor of an alcoholic beverage emitting from his breath and his person." R.R. at 21a. On the "walk and turn" sobriety test, Green exhibited "seven out of the eight validated clues of impairment." *Id*. On the one-leg stand test, he exhibited "one out of the four validated clues of impairment." *Id*. Trooper Arbogast also conducted a horizontal gaze nystagumus (HGN) test, during which Green remained "dazed" with "glassy, bloodshot eyes." *Id*. After those tests, Trooper Arbogast asked Green to take a preliminary breath test for DUI, which Green refused to do. *Id*. Trooper Arbogast concluded that Green was unsafe to drive and arrested him for DUI. *Id*.

On cross-examination, Trooper Arbogast confirmed that when he initiated the traffic stop, Green pulled over promptly and appropriately. R.R. at 26a. He stated that rolling through a stop sign can be but is not necessarily a sign of intoxication. *Id*. at 27a. He acknowledged that he did not recognize Green, so did not know Green's "normal" appearance and speech patterns but maintained that based on his training and experience of "normal person compared to impaired drivers," he believed Green was impaired. *Id*. He did not ask Green how long ago

3

he had drunk the beers at his daughter's house. *Id*. at 28a-29a. He asked Green whether he had any medical issues with his vision that would affect the HGN test, but did not ask whether Green had any physical issues that might affect the other field sobriety tests; he explained that it is typical and part of training to ask that, but added that most people who do have a physical issue will tell the officer about it prior to the field sobriety tests. *Id*. at 30a. He acknowledged that the field sobriety tests had mixed results because Green did not fail the one-leg standing test. *Id*. at 30a-32a.

On redirect examination, Trooper Arbogast confirmed that Green did not tell him about any physical issues that would affect the field sobriety tests, and he did not observe any outwardly visible disabilities. R.R. at 35a. He added that basing the conclusion of impairment on the totality of circumstances matters because some individuals, like athletes, may be able to complete the field sobriety tests without giving "clues" of impairment. *Id*. at 35a-36a.

After Trooper Arbogast's testimony (Green did not testify at the hearing), the trial court viewed dashboard camera video of the incident from Green's vehicle, which had been agreed to by counsel for the DOT. R.R. at 36a-40a. The court did not discuss or describe the video on the record other than to mention that, perhaps due to Green's "Boston accent," the court "did not really hear a lot of slurring." However, the court concluded on the record that during the incident, Green had "thick, slurred speech." R.R. at 36a-40a.

At the end of the hearing, the trial court announced from the bench that the DOT had presented reasonable grounds for Trooper Arbogast to have asked Green to undergo chemical testing and advised that a written order would be forthcoming. *Id*. at 39a. The next day, the court issued its order with findings of

4

fact and conclusions of law. R.R. at 44a-47a. The court found Trooper Arbogast credible and denied Green's appeal. *Id*. at 46a-47a. Green timely appealed to this Court and the trial court issued a formal opinion largely restating its facts and reasoning from the initial order. *Id*. at 54a-57a.

## II.  Discussion

Section 1547 of the Vehicle Code states:

> **(a) General rule.**--Any person who drives . . . a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood . . . if a police officer has reasonable grounds to believe the person to have been driving . . . in violation of [75 Pa. C.S. § 3802] (relating to driving under influence of alcohol or controlled substance)[.]

> **(b) Civil penalties for refusal.**--

> (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the [DOT] shall suspend the operating privilege of the person as follows:

> (i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa.C.S. § 1547(a), (b)(1)(1). In this context, the DOT has the burden to show that the licensee:

> (i) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating the vehicle under the influence of alcohol or a controlled substance; (ii) was asked to submit to a chemical test; (iii) refused to do so; and (iv) was warned that a refusal would result in the suspension of his driver's license.

5

*Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 436 (Pa. Cmwlth. 2014).[3] Whether an officer has reasonable grounds to believe a driver is driving while impaired is a question of law fully reviewable by this Court. *Walkden*, 103 A.3d at 436. Reasonable grounds exist when the police officer, viewing the facts and the totality of the circumstances as they appeared at the time, can conclude that the driver was driving while impaired. *Id*.

Driver's license suspension is a civil matter, and the "reasonable grounds" standard is less rigorous than the "beyond a reasonable doubt" standard required for a criminal conviction or even the probable cause standard required to substantiate an arrest in a criminal prosecution. *Walkden*, 103 A.3d at 437. All that is required is some objective evidence that the driver had "in the past, while intoxicated, operated or exercised control over the movement of the vehicle." *Id*. While a driver's "glassy eyes alone [are] insufficient to support a finding of reasonable grounds, the odor of alcohol and refusal to submit to a preliminary breath test at the scene are valid and relevant factors in this context." *Sisinni v. Dep't of Transp., Bureau of Driver Licensing*, 31 A.3d 1254, 1258-60 (Pa. Cmwlth. 2011).

In *Sisinni*, an experienced police officer stopped the driver after he drove through a red light. 31 A.3d at 1257. The officer detected an odor of alcohol on the driver, who had red and glassy eyes and admitted that he had two drinks before driving. *Id*. The driver, who was cooperative, passed the "walk and turn" and one-leg standing tests, but had positive results on the HGN eye test. *Id*. The driver refused the preliminary breath test and formal chemical testing. *Id*. at 1257-

---

[3] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep.t of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

6

58. The trial court concluded that the officer had reasonable grounds to believe the driver had been driving impaired and denied the driver's appeal; this Court affirmed. *Id*. at 1258-59. We noted that while a refusal to submit to a preliminary breath test at the scene may not be admissible in criminal DUI proceedings, the Vehicle Code does not prohibit it from admission and consideration in license suspension cases. *Id*. at 1260.

In *Stancavage v. Department of Transportation, Bureau of Driver Licensing*, 986 A.2d 895 (Pa. Cmwlth. 2009), the police officer stopped the driver for speeding and following another vehicle too closely. 986 A.2d at 896. The driver, who was cooperative, had glassy eyes but there was no odor of alcohol or slurred speech. *Id*. at 896-97. The officer concluded that the driver failed all three field sobriety tests, but testified equivocally to the actual results. *Id*. The driver refused chemical testing, was noticed for suspension of his driving privileges, and appealed. *Id*. at 897. The trial court found that the officer did not have reasonable grounds to suspect impairment; this Court affirmed, noting that aside from the officer's equivocal testimony regarding the field sobriety tests, there were no other obvious physical indicia of intoxication. *Id*. at 899-900.

Here, the trial court concluded that Trooper Arbogast had reasonable grounds to suspect impairment. R.R. at 55a. Green argues that the trial court erred because his bloodshot eyes and the odor of alcohol were insufficient to establish reasonable grounds; he points out the trial court's statement during the hearing that it "did not really hear a lot of slurring" on the video, perhaps due to Green's Boston accent. Green's Br. at 14-15. Green emphasizes that he cooperated during the traffic stop and that Trooper Arbogast did not ask him how long ago he had been drinking or if he had any medical conditions that would affect the field sobriety tests. *Id*. at

7

He notes that Trooper Arbogast found he "passed" the one-leg stand balancing test because he showed only one "clue" of impairment. *Id*. He asserts that this case is like *Stancavage*. The DOT responds that the trial court did not err. DOT's Br. at 10-16.

We agree with the DOT and the trial court. The only element of the *Walkden* test at issue here is whether Trooper Arbogast had reasonable grounds to suspect that Green had been driving impaired. As noted, the standard in this context is lower than the criminal standards of probable cause or "beyond a reasonable doubt." *Walkden*, 103 A.3d at 437. The officer need not be absolutely certain of impairment or even ultimately correct. *Sisinni*, 31 A.3d at 1259. The standard is whether, given the totality of the facts and circumstances as they appeared at the time, the officer could conclude that the motorist was driving while impaired such that chemical testing was warranted. *Walkden*, 103 A.3d at 436-37.

Here, the trial court deemed Trooper Arbogast credible and found as fact that during the stop, Green had an odor of alcohol, glassy and bloodshot eyes, a sluggish and dazed appearance, and at least some degree of slurred speech. R.R. at 55a. The court found that Green admitted to having a "couple" of drinks before driving and that he exhibited "indicia of impairment" on the field sobriety tests. *Id*. This was supported by Trooper Arbogast's testimony that Green showed indicia of impairment on the HGN and "walk and turn" field sobriety tests and had at least one positive result on the one-leg standing test. R.R. at 21a. The trial court stated that Trooper Arbogast's credible testimony was bolstered by his unrefuted training and experience, having participated in thousands of traffic stops and made over 100 DUI arrests prior to this incident. *Id*. at 23a. Moreover, the trial court personally viewed Green's own proffered video of the incident from his dashboard camera and

8

concluded that it corroborated Trooper Arbogast's testimony, including Green's admission to drinking before driving and indicia of impairment during the incident, "especially in regard to issues with following direction and balance." *Id*. at 55a-56a. The court also took note of Green's refusal to take a preliminary breath test, which this Court has stated is admissible and relevant in the license suspension context. *See Sisinni*, 31 A.3d at 1260.

Green's arguments that he had only bloodshot eyes and an odor of alcohol during the stop ignore that Trooper Arbogast also credibly observed him to slur his words and have a "sluggish and dazed appearance." R.R. at 18a-19a. Even though the trial court described Green's slurring on the video as relatively minor, the court still found it as fact. R.R. 36a-40a & 55a. Trooper Arbogast admittedly failed to ask Green whether he had a medical reason for appearing impaired or performing poorly on the field sobriety tests, but his explanation that individuals with medical conditions usually volunteer that information during a stop was reasonable in light of his experience. *Id*. at 30a. Trooper Arbogast also acknowledged that Green's field sobriety tests had mixed results, but his explanation that some individuals like athletes can be impaired and perform well on the tests was similarly reasonable. *Id*. at 35a-36a.

Contrary to Green's position, this case is not like *Stancavage*. There, unlike here, the police officer observed no odor of alcohol on the driver and no slurred speech; in fact, the officer testified only to the driver's glassy eyes and could point to no other physical indicia of impairment. 986 A.2d at 899-900. The trooper's conclusion that the driver failed the field sobriety tests was equivocal. *Id*. at 896-97. Crucially, the trial court in *Stancavage*, which personally observed the trooper's testimony, did not conclude that the testimony established reasonable grounds, and

9

although the question is one of law and fully reviewable on appeal, the facts as found by the trial court supported the outcome there.

This case is more like *Sisinni*, where the driver, like Green, had glassy eyes and an odor of alcohol and admitted to drinking before driving; here, Trooper Arbogast also observed Green's slurred speech and sluggish and dazed appearance. 31 A.3d at 1257; R.R. at 18a-19a. Here, as in *Sisinni*, the field sobriety test results were mixed. *Sisinni*, 31 A.3d at 1257-58; R.R. at 21a. *Sisinni* also established that refusal to take a preliminary breath test is admissible and relevant in license suspension matters. *Sisinni*, 31 A.3d at 1260; R.R. at 21a.

What was present in neither *Stancavage* nor *Sisinni*, but which was present in this case, was actual video of the traffic stop, which Green proffered and which the trial court watched during the hearing. R.R. at 36a-40a. The trial court based its conclusion of reasonable grounds not only on Trooper Arbogast's testimony, but on its personal observation of the video. *Id*. Again, the question is one of law and fully reviewable on appeal, but the facts as found by the trial court here supported the court's conclusion that Trooper Arbogast had reasonable grounds to suspect Green of impaired driving. Given the standard of review in this licensing suspension matter, which is decidedly lower than that required in criminal DUI matters, we too conclude that the totality of circumstances here, including objective evidence of multiple indicia of Green's impairment, established reasonable grounds for Trooper Arbogast to believe that Green had driven while intoxicated and to request that Green undergo chemical testing. *See Walkden*, 103 A.3d at 437; *Sisinni*, 31 A.3d at 1257-59.

10

### III. Conclusion

For the foregoing reasons, the trial court did not err or abuse its discretion in denying Green's appeal from the DOT's notice of suspension of his driver's license for one year. Accordingly, we affirm the trial court's order.

_____
CHRISTINE FIZZANO CANNON, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arthur Lawrence Green, Jr.,      :
                Appellant      :
     :
     v.      :
     :
Commonwealth of Pennsylvania,      :
Department of Transportation,      :    No. 1050 C.D. 2023
Bureau of Driver Licensing      :

# **O R D E R**

AND NOW, this 14th day of November, 2024, the August 13, 2023, order of the Court of Common Pleas of Union County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge