IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott Moore,                           :
                        Appellant      :
                                       :
            v.                         :
                                       :
Commonwealth of Pennsylvania,          :
Department of Transportation,          :   No. 33 C.D. 2024
Bureau of Driver Licensing             :   Submitted: December 9, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                          FILED: April 1, 2025


        Scott Moore (Licensee) appeals from the December 13, 2023 order of the
Court of Common Pleas of Cumberland County (Trial Court) that dismissed Licensee's
statutory appeal from a 12-month driver's license suspension and a lifetime commercial
driving privilege disqualification[1] imposed by the Commonwealth of Pennsylvania,
Department of Transportation, Bureau of Driver Licensing (DOT), pursuant to what is
commonly known as the Vehicle Code's Implied Consent Law, 75 Pa. C.S. § 1547(b)
(Implied Consent Law), as a result of Licensee's refusal to submit to chemical testing upon
his arrest for driving under the influence of alcohol or a controlled substance (DUI).[2] Upon
review, we reverse.

        Police arrested Licensee for suspicion of DUI on the night of December 25,
2022. *See* Trial Court Memorandum Opinion & Order of Court dated December 13, 2023

_____

[1] 75 Pa. C.S. § 1613(c) (relating to commercial driving privilege disqualification for two violations
of certain offenses).

[2] 75 Pa. C.S. § 3802.

(Trial Court Opinion) at 1. Police transported Licensee to a local hospital, where he refused to submit to chemical blood testing. *See id.* Thereafter, on January 6, 2023, DOT notified Licensee that, as a result of his refusal to submit to chemical testing, his driving privilege would be suspended for a period of 12 months and his commercial driving privilege would be disqualified for life. *See* Official Notice of Driving Privilege Suspension mailed January 6, 2023, Reproduced Record (R.R.) at 35-38;[3] Official Notice of Commercial Driving Privilege Disqualification mailed January 6, 2023, R.R. at 39-40. Licensee appealed the suspension and disqualification. *See* Statutory Operator's License Appeal, R.R. at 43-55. The Trial Court conducted a hearing on September 18, 2023, and dismissed the appeal by order dated December 13, 2023. *See* Notes of Testimony, November 8, 2023 (N.T.); *see also* Trial Court Opinion. Licensee timely appealed to this Court.[4] *See* Notice of Appeal, R.R. at 64.

Licensee raises one claim on appeal: the Trial Court erred by determining that the police had reasonable grounds to believe that Licensee was operating a motor vehicle under the influence of alcohol so as to allow the police to request that Licensee submit to chemical testing pursuant to the Implied Consent Law. *See* Licensee's Br. at 6 & 14-17. Licensee argues that the police officer lacked sufficient indicators of intoxication to justify a request that he submit to field sobriety testing and that, even if justified, the field sobriety tests did not sufficiently indicate that he was operating a vehicle while intoxicated to warrant a request that he submit to chemical testing. *See id.* at 15-17. We agree.\

---

[3] We note that the reproduced record filed by Licensee does not comply with Pennsylvania Rule of Appellate Procedure 2173, which requires pages be separately numbered with Arabic figures followed by a small "a." *See* Pa.R.A.P. 2173. However, for the sake of clarity, citations to the reproduced record herein will follow the numbering convention employed by Licensee.

[4] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

Initially, we note that,

> [t]o sustain a license suspension under [the Implied Consent Law], DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing,* 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). In the instant matter, Licensee challenges only the Trial Court's determination that the police had reasonable grounds to believe that Licensee was driving while under the influence of alcohol.

"The question of whether an officer had reasonable grounds to arrest a licensee is a question of law fully reviewable by this court on a case-by-case basis." *Yencha v. Dep't of Transp., Bureau of Driver Licensing*, 187 A.3d 1038, 1044 (Pa. Cmwlth. 2018). In assessing whether DOT has met its burden of proving reasonable grounds to believe that a licensee drove while intoxicated, this Court considers the totality of the circumstances to determine, as a matter of law, whether a person in the position of the arresting officer could reasonably have reached this conclusion. *See Yencha*, 187 A.3d at 1044. As the Court has explained,

> [a]n officer has reasonable grounds to believe an individual was operating a motor vehicle under the influence of alcohol if a reasonable person in the position of the police officer, viewing the facts and circumstances as they appeared to the officer at the time, could conclude that the driver drove his car while under the influence of alcohol. The test for determining if reasonable

3

grounds exist is not very demanding. An officer may acquire reasonable grounds to believe that a licensee was driving under the influence of alcohol *at any time* during the course of interaction between the officer and the licensee.

*Kachurak v. Dep't of Transp., Bureau of Driver Licensing*, 913 A.2d 982, 985 (Pa. Cmwlth. 2006) (internal citations and quotation marks omitted); *see also Yencha*, 187 A.3d at 1044. Further,

[t]he standard of reasonable grounds to support a license suspension does not rise to the level of probable cause required for a criminal prosecution. A driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings. It is axiomatic that the legality of a driver's underlying DUI arrest is irrelevant for purposes of a license suspension proceeding for refusal to submit to chemical testing.

*Kachurak*, 913 A.2d at 985-86 (internal citations omitted); *see also Yencha*, 187 A.3d at 1044 ("The test for whether a police officer has reasonable grounds to believe that a licensee drove while intoxicated is not demanding; it requires even less proof than what is necessary to establish probable cause for a criminal prosecution."). Moreover,

[a]n arresting officer need not prove that he was correct in his belief that the licensee was operating the vehicle while under the influence. Even if later evidence proves the officer's belief to be erroneous, this will not render the reasonable grounds void. Further, an officer need not witness the licensee operating a vehicle to place him under arrest for driving under the influence. Additionally, an officer's reasonable belief that the licensee was driving while under the influence will justify a request to submit to chemical testing if one reasonable interpretation of the circumstances as they appeared at the time supports the officer's belief. Further, courts appropriately defer to an investigating officer's experience and observations where reasonable grounds exist to support the officer's belief based on the totality of the circumstances.

*Yencha*, 187 A.3d at 1044-45 (internal quotation marks and citations omitted). In addition,

4

> [t]he only valid inquiry on this issue at the *de novo* hearing is whether, viewing the facts and circumstances as they appeared at the time, a reasonable person in the position of the police officer could have concluded that the motorist was operating the vehicle and under the influence of intoxicating liquor.

*Dep't of Transp., Bureau of Traffic Safety v. Dreisbach*, 363 A.2d 870, 872 (Pa. Cmwlth. 1976) (footnote omitted).

Here, Officer Nicholas Hughes of the Lower Allen Township Police Department[5] testified on behalf of DOT. *See* N.T. at 5-27; R.R. at 5-27. Officer Hughes explained that he was dispatched to a single vehicle accident at just before 10:00 p.m. on December 25, 2022. *See* N.T. at 6-7, R.R. at 6-7. Once on scene, Officer Hughes met with Kala Kellum, Licensee's fiancé, who had been driving the vehicle involved in the accident. *See* N.T. at 7 & 16, R.R. at 7 & 16. Ms. Kellum explained to Officer Hughes that she was coming from a party where she had consumed alcohol. *See* N.T. at 7 & 9, R.R. at 7, 9 & 26. Ms. Kellum did not indicate whether Licensee had attended the party or consumed alcohol. *See* N.T. at 7 & 26, R.R. at 7 & 26.

Officer Hughes went and spoke with Licensee after speaking to Ms. Kellum. *See* N.T. at 8, R.R. at 8. Licensee was already speaking to another Lower Allen Township police officer[6] when Officer Hughes arrived. *See* N.T. at 8, R.R. at 8. Licensee acknowledged both that he called the police and that he had operated his vehicle. *See* N.T. at 8, R.R. at 8. Licensee explained to the police that he had been driving directly behind Ms. Kellum and had witnessed the crash. *See* N.T. at 9, R.R. at 9. However, Officer

---

[5] Officer Hughes had been a Lower Allen Township police officer for approximately two years. *See* N.T. at 5, R.R. at 5.

[6] While not related to Licensee, this second officer is coincidentally also named Moore. *See* N.T. at 8, R.R. at 8.

Hughes did not recollect whether Licensee indicated that he had been at the party with Ms. Kellum. *See* N.T. at 9, R.R. at 9.

Officer Hughes characterized Licensee as being uncooperative with the police because Licensee was "verbally resistant" to police requests/commands that he remain in his vehicle. N.T. at 8, R.R. at 8. Officer Hughes also explained, however, that Licensee's uncooperative behavior appeared to be linked to Licensee's desire to care for his 10-month-old son, who had been a passenger in Ms. Kellum's vehicle during the accident. *See* N.T. at 16, R.R. at 16.

Otherwise, beyond Licensee's desire to exit his vehicle and care for his child in contradiction to the police directives, Officer Hughes explained that he observed nothing abnormal about Licensee's speech or behavior. *See* N.T. at 16, R.R. at 16. Officer Hughes testified that the police had received no reports of Licensee driving erratically. *See* N.T. at 15, R.R. at 15. Officer Hughes further testified that Licensee's speech was not slurred. *See* N.T. at 16, R.R. at 16. Likewise, Officer Hughes testified that Licensee's eyes were neither bloodshot nor glassy. *See* N.T. at 17, R.R. at 17. Officer Hughes also explained that Licensee did not exhibit any issues with balance or coordination. *See* N.T. at 17, R.R. at 17. Additionally, although the other officer present told Officer Hughes that she smelled alcohol, Officer Hughes testified that he did not smell alcohol on Licensee. *See* N.T. at 15 & 17, R.R. at 15 & 17. In short, Officer Hughes explained that, in his initial interactions with Licensee, Officer Hughes did not personally observe any clues of intoxication. *See* N.T. at 17, R.R. at 17.

Nonetheless, based on the above information and observations, and drawing on his professional experience as well as his personal experience observing individuals under the influence of alcohol, Officer Hughes requested that Licensee submit to field sobriety testing, to which request Licensee ultimately agreed. *See* N.T. at 9, 17 & 24-25, R.R. at 9, 17 & 24-25. Officer Hughes conducted three field sobriety tests: the horizontal

6

and vertical nystagmus test, which yielded a total of six intoxication clues;[7] the walk-and-turn test, which yielded two out of eight intoxication clues;[8] and the one-leg stand test, which yielded two out of four clues.[9] *See* N.T. at 9-12 & 17-24, R.R. at 9-12 & 17-24.

After conducting the field sobriety testing, Officer Hughes requested that Licensee submit to a portable breath test, to which request Licensee also agreed. *See* N.T. at 12, R.R. at 12. Officer Hughes thereafter placed Licensee under arrest for suspicion of DUI and requested that Licensee submit to chemical testing, which request Licensee refused. *See* N.T. at 13, R.R. at 13.

The Trial Court committed an error of law by not sustaining Licensee's statutory appeal in this matter because Officer Hughes did not possess reasonable grounds to request that Licensee submit to chemical testing. The Trial Court explained its reasoning behind the determination that the police had reasonable grounds to request that Licensee submit to chemical testing thusly:

> [Licensee's reasonable grounds] argument is less implausible but, nonetheless, finding (a) that a police officer detected the odor of alcohol emanating from [Licensee], (b) that [Licensee's] fiancé admitted that they had both been drinking at the Christmas party, (c) that [Licensee] behaved in a belligerent and uncooperative manner throughout the interaction with police [], and (d) that [Licensee] wobbled and miscounted during the one-

[7] Officer Hughes explained: "So [the horizontal nystagmus testing] on [Licensee] showed distinct and sustained nystagmus both at maximum deviation for both eyes and also prior to the onset of 45 degrees." N.T. at 10, R.R. at 10.

[8] The two clues Officer Hughes observed during the walk-and-turn test were that Licensee stepped off the imaginary line and also turned the opposite direction from what he had been instructed when conducting the required turn. *See* N.T. at 11, R.R. at 11. Officer Hughes also acknowledged that, prior to conducting the walk-and-turn test, Licensee informed him that Licensee has duck feet that may prevent him from properly conducting the walk-and-turn testing. *See id.*

[9] Officer Hughes explained that the indicators he saw during the one-leg test were that Licensee repeatedly put his foot down and also allowed his arms to leave his side to a distance greater than six inches. *See* N.T. at 11, R.R. at 11.

> leg-stand field sobriety test, we conclude that police enjoyed "reasonable grounds" – a not very demanding standard [] – to believe that [Licensee] was under the influence of alcohol[.]

Trial Court Opinion at 2. These reasons do not stand up to scrutiny.

Prior to requesting that Licensee participate in field sobriety testing, Officer Hughes did not observe Licensee exhibiting any signs of intoxication. Officer Hughes did not observe Licensee exhibiting glassy eyes, slurred speech, or altered gait, nor did Officer Hughes detect an odor of alcohol on Licensee (although another officer present indicated otherwise). Licensee's behavior at the scene, although somewhat uncooperative,[10] was easily explained as the concern of a man who had just watched his fiancée and young child involved in a car accident. Moreover, the information Officer Hughes received from Ms. Kellum about party attendance and alcohol consumption that evening concerned her own behavior and did not pertain to Licensee. Additionally, Officer Hughes had no information whatsoever to indicate Licensee had been driving erratically or in an unsafe manner prior to stopping at the accident site. Accordingly, the only indicia of Licensee's intoxication upon which Officer Hughes could have based the request that Licensee submit to chemical

---

[10] We observe that the Trial Court cites *Koutsouroubas v. Department of Transportation, Bureau of Driver Licensing*, 61 A.3d 349 (Pa. Cmwlth. 2013), for the apparent proposition that belligerent and/or uncooperative behavior can constitute reasonable grounds upon which police may request that a motorist submit to chemical testing. *See* Trial Court Opinion at 2. *Koutsouroubas* does not stand for the proposition that belligerence or uncooperative behavior alone is sufficient to request chemical testing. *Koutsouroubas* involved a licensee who exhibited multiple signs of intoxication beyond belligerence – slurred speech, glassy eyes, confusion of registration information with insurance information, an odor of alcohol, an admission of consuming alcoholic beverages, and a refusal to submit to field sobriety testing – that together amounted to reasonable grounds for police to request chemical testing, not simply that belligerence alone sufficed. *See Koutsouroubas*, 61 A.3d at 353. Accordingly, even if Licensee's behavior herein could be properly described as "belligerence," the Trial Court's citation to *Koutsouroubas* does not support an argument that such belligerence on its own would supply reasonable grounds to request that a motorist submit to chemical testing. Further, we observe that the fact that Licensee agreed to participate in both field sobriety testing and portable breath testing belies the suggestion that his behavior rose to a level of belligerence that, on its own, supports the existence of reasonable grounds to request that Licensee submit to chemical testing.

8

testing in this case came in the form of a statement from another officer that contradicted his own personal observations and from the results of the field sobriety testing he conducted. However, this Court has held that police testimony that a licensee had failed three field sobriety tests did not provide reasonable grounds to believe that licensee was under the influence of alcohol when operating his vehicle where, prior to the field sobriety testing, the licensee exhibited only one obvious indicator of intoxication. *See Stancavage v. Dep't of Transp., Bureau of Driver Licensing*, 986 A.2d 895, 898-900 (Pa. Cmwlth. 2009).[11] Accordingly, even assuming the veracity of the other officer's observation regarding an odor of alcohol, Licensee's failure of field sobriety testing in this matter did not provide the police with reasonable grounds to conclude that Licensee was operating the vehicle while under the influence of intoxicating liquors to permit a request that Licensee submit to chemical testing. *See id.* For these reasons, we find that the Trial Court erred by determining that the police had reasonable grounds to believe that Licensee was operating a motor vehicle under the influence of alcohol so as to permit a request that Licensee submit to chemical testing. Accordingly, we reverse the Trial Court's order dismissing Licensee's statutory appeal of his 12-month driver's license suspension and lifetime commercial driving privilege disqualification.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[11] In *Stancavage*, this Court found that, in the absence of other traditional indicators of intoxication – e.g., staggering, swaying, falling down, belligerent behavior, slurred speech, and the odor of alcohol – glassy eyes alone were insufficient to support the conclusion that an officer had reasonable grounds to believe an individual was intoxicated at a given point in time. *See Stancavage*, 986 A.2d at 899.

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott Moore,                              :
                    Appellant            :
                                         :
          v.                             :
                                         :
Commonwealth of Pennsylvania,            :
Department of Transportation,            :   No. 33 C.D. 2024
Bureau of Driver Licensing               :

# **O R D E R**

AND NOW, this 1st day of April, 2025, the December 13, 2023 order of the Court of Common Pleas of Cumberland County is REVERSED.


_____
CHRISTINE FIZZANO CANNON, Judge