IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy Muehlen,                          :
                          Appellant        :
                                          :
              v.                          :
                                          :
Commonwealth of Pennsylvania,             :
Department of Transportation,             :    No. 64 C.D. 2024
Bureau of Driver Licensing                :    Submitted: May 6, 2025

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                           FILED: June 12, 2025


              Timothy Muehlen (Licensee) appeals from the December 20, 2023
order (Trial Court Order) of the Court of Common Pleas of Bucks County (Trial
Court) that dismissed Licensee's statutory appeal from a 12-month driver's license
suspension imposed by the Commonwealth of Pennsylvania, Department of
Transportation, Bureau of Driver Licensing (DOT), pursuant to what is commonly
known as the Vehicle Code's[1] Implied Consent Law, 75 Pa.C.S. § 1547(b) (Implied
Consent Law), as a result of Licensee's refusal to submit to chemical testing upon
his arrest for driving under the influence of alcohol or a controlled substance (DUI).[2]
Upon review, we reverse.

_____

[1] Act of June 17, 1976, P.L. 162, 75 Pa.C.S. §§ 101-9910.

[2] 75 Pa.C.S. § 3802.

## I. Background and Procedural Posture

Police arrested Licensee for suspicion of DUI on the morning of February 12, 2023. *See* Opinion dated June 27, 2024 (Trial Court Opinion) at 2. Thereafter, on February 21, 2023, DOT notified Licensee that his driving privilege would be suspended for a period of 12 months as a result of his refusal to submit to chemical testing. *See* License Suspension Notification mailed February 21, 2023, Reproduced Record (R.R.) at 3a-6a. Licensee appealed the suspension. The Trial Court conducted a hearing on December 20, 2023, and dismissed the appeal by order that same day. *See* Notes of Testimony, December 20, 2023 (N.T.), R.R. at 7a-60a; Trial Court Order, R.R. at 61a. Licensee timely appealed to this Court on January 22, 2024.[3]

## II. Issues

Licensee raises one claim on appeal before this Court:[4] that the Trial Court erred by determining that the police had reasonable grounds to believe that Licensee was operating a motor vehicle under the influence of alcohol, so as to allow the police to request that Licensee submit to chemical testing. *See* Licensee's Br. at 2 & 5-9. Licensee argues that the evidence adduced at the hearing illustrated that

---

[3] We observe that, while dated December 20, 2023, the Trial Court Order was not entered until December 21, 2023, which date began the appeal period. *See* Pa.R.A.P. 108(b) (regarding date of entry of civil orders). Technically, therefore, the 30th day after the Trial Court Order was January 20, 2024. *See* Pa.R.A.P. 903(a) (requiring notice of appeal be filed within 30 days of the entry of the order from which an appeal is taken). However, because January 20, 2024, was a Saturday, Licensee had until the next business day, or Monday, January 22, 2024, to timely file the Notice of Appeal. *See* 1 Pa.C.S. § 1908.

[4] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

2

Licensee was merely sleeping off his intoxication in his car and that the Supreme Court's recent decision in *Bold v. Department of Transportation, Bureau of Driver Licensing*, 320 A.3d 1185 (Pa. 2024), requires this Court to reverse the Trial Court's dismissal of his statutory appeal of his license suspension. *See* Licensee's Br. at 5-9. We agree.

## III. Discussion

Section 1547(a) of the Vehicle Code provides, in pertinent part, that

[a]ny person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section . . . 3802 (relating to driving under influence of alcohol or controlled substance) . . . .

75 Pa.C.S. § 1547(a). When a licensee refuses to submit to properly requested chemical testing, the Implied Consent Law provides that DOT "shall suspend the operating privilege of the person[.]" 75 Pa.C.S. § 1547(b)(1).

To sustain a license suspension under [the Implied Consent Law], DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making

3

a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing,* 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). Here, Licensee challenges only the Trial Court's determination that the police had reasonable grounds to believe that he was driving while under the influence of alcohol at the time he was arrested for DUI.

"The question of whether an officer had reasonable grounds to arrest a licensee is a question of law fully reviewable by this court on a case-by-case basis." *Yencha v. Dep't of Transp., Bureau of Driver Licensing*, 187 A.3d 1038, 1044 (Pa. Cmwlth. 2018). In assessing whether DOT has met its burden of proving reasonable grounds to believe that a licensee drove while intoxicated, this Court considers the totality of the circumstances to determine, as a matter of law, whether a person in the position of the arresting officer could reasonably have reached this conclusion. *See Yencha*, 187 A.3d at 1044. As the Court has explained,

> [a]n officer has reasonable grounds to believe an individual was operating a motor vehicle under the influence of alcohol if a reasonable person in the position of the police officer, viewing the facts and circumstances as they appeared to the officer at the time, could conclude that the driver drove his car while under the influence of alcohol. The test for determining if reasonable grounds exist is not very demanding. An officer may acquire reasonable grounds to believe that a licensee was driving under the influence of alcohol *at any time* during the course of interaction between the officer and the licensee.

*Kachurak v. Dep't of Transp., Bureau of Driver Licensing*, 913 A.2d 982, 985 (Pa. Cmwlth. 2006) (internal citations and quotation marks omitted) (emphasis in

original); *see also Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999) ("Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor."); *Yencha*, 187 A.3d at 1044. Further,

> [t]he standard of reasonable grounds to support a license suspension does not rise to the level of probable cause required for a criminal prosecution. A driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings. It is axiomatic that the legality of a driver's underlying DUI arrest is irrelevant for purposes of a license suspension proceeding for refusal to submit to chemical testing.

*Kachurak*, 913 A.2d at 985-86 (internal citations omitted); *see also Yencha*, 187 A.3d at 1044 ("The test for whether a police officer has reasonable grounds to believe that a licensee drove while intoxicated is not demanding; it requires even less proof than what is necessary to establish probable cause for a criminal prosecution."). Moreover,

> [a]n arresting officer need not prove that he was correct in his belief that the licensee was operating the vehicle while under the influence. Even if later evidence proves the officer's belief to be erroneous, this will not render the reasonable grounds void. Further, an officer need not witness the licensee operating a vehicle to place him under arrest for driving under the influence. Additionally, an officer's reasonable belief that the licensee was driving while under the influence will justify a request to submit to chemical testing if one reasonable interpretation of the circumstances as they appeared at the time supports the officer's belief. Further, courts appropriately defer to an investigating officer's experience and observations where

5

reasonable grounds exist to support the officer's belief based on the totality of the circumstances.

*Yencha*, 187 A.3d at 1044-45 (internal quotation marks and citations omitted). In addition,

> [t]he only valid inquiry on this issue at the *de novo* hearing is whether, viewing the facts and circumstances as they appeared at the time, a reasonable person in the position of the police officer could have concluded that the motorist was operating the vehicle and under the influence of intoxicating liquor.

*Dep't of Transp., Bureau of Traffic Safety v. Dreisbach*, 363 A.2d 870, 872 (Pa. Cmwlth. 1976) (footnote omitted); *see also Demarchis v. Dep't of Transp., Bureau of Driver Licensing*, 999 A.2d 639, 642 (Pa. Cmwlth. 2010) ("An officer's belief that a licensee was operating a vehicle while under the influence of alcohol or a controlled substance must only be objective in light of the surrounding circumstances."). Additionally, as this Court has recently explained:

> An officer, however, need not actually witness a licensee operate a vehicle to establish reasonable grounds. *Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 437 (Pa. Cmwlth. 2014); *see also Gaskin v. Dep't of Transp., Bureau of Driver Licensing*, (Pa. Cmwlth., No. 1178 C.D. 2018, filed Jan. 3, 2023), slip op. at 12 ("[T]he Department is not required to establish that either the arresting officer or another person directly observed a licensee operating a vehicle or that the licensee admitted to doing so for it to meet its burden of proving reasonable grounds."). "[P]roving that the licensee had control of the movements of . . . the vehicle [], either by direct evidence or evidence supporting an inference that the licensee previously had such control, is sufficient." *Dep't of Transp., Bureau of Driver Licensing v. Bendik*,

6

535 A.2d 1249, 1251 (Pa. Cmwlth. 1988) (emphasis added).

*Palitti v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 909 C.D. 2023, filed Dec. 5, 2024),[5] slip op. at 14-15.

Here, Officer Steven Rogozinski of the Bensalem Township Police Department[6] testified at the license suspension hearing on behalf of DOT. *See* N.T. at 6-22. Officer Rogozinski testified that, while on duty in the early morning hours of February 12, 2023, he responded to Fisher's Tudor House in Bensalem at 4:05 a.m., where he found Licensee's vehicle parked in the middle of the parking lot and running. *See* N.T. at 9, 10 & 15-16. Officer Rogozinski approached the vehicle and observed a male – later identified as Licensee – alone in the vehicle, in the driver's seat and slumped to the right, apparently asleep. *See* N.T. at 9, 10-11 & 16.

Officer Rogozinski explained that he knocked on the vehicle's driver's side window and sunroof and flashed his flashlight inside the vehicle, with no response from Licensee. *See* N.T. at 9 & 17. Officer Rogozinski then opened the driver's side door of the vehicle, woke Licensee up, and directed him to get out of the vehicle. *See* N.T. at 9 & 17. Officer Rogozinski explained that Licensee was disoriented and displayed very slow, delayed, lethargic movements and speech. *See* N.T. at 9-11 & 17. Officer Rogozinski observed an odor or alcohol coming from Licensee and from the vehicle. *See* N.T. at 13, 18. Officer Rogozinski also observed

---

[5] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

[6] Officer Rogozinski is a 25-year veteran of the Bensalem Township Police Department. *See* N.T. at 7.

that Licensee's speech was mumbled, slurred, and difficult to understand. *See* N.T. at 13 & 18-19.

Licensee ultimately exited the vehicle and produced his license from his wallet upon request. *See* N.T. at 12 & 18. Officer Rogozinski explained that a second officer on scene, Officer Alex Agiedu, conducted field sobriety tests of Licensee. *See* N.T. at 13. After the field sobriety testing, Officer Rogozinski administered a preliminary breath test on Licensee, which yielded a positive result for the presence of alcohol. *See* N.T. at 13.

On cross-examination, Officer Rogozinski explained that Fisher's Tudor House is a restaurant with a nightclub inside. *See* N.T. at 14. Officer Rogozinski explained that the night club closes at 2 a.m. *See* N.T. at 15. He further explained that the parking lot at Fisher's Tudor House is for patrons only and has two levels – one at road level and a second level up a ramp that ascends from the first level to the second level. *See* N.T. at 15. Officer Rogozinski testified that he found Licensee's vehicle effectively in the middle of the lower parking lot, parked within the lines of a parking space. *See* N.T. at 15. Officer Rogozinski conceded that it was likely quite cold on the February morning in question, and that someone sleeping in a vehicle would likely want their vehicle to be warmed up as a result. *See* N.T. at 16. Officer Rogozinski explained that the vehicle was in park and the engine was not revving, but stated that he did not recall whether or not Licensee's foot was on the vehicle's brake. *See* N.T. at 19-20. Officer Rogozinski also testified that he does not believe that Licensee was wearing a seat belt when approached. *See* N.T. at 20. He further testified that he did not remember whether Licensee was wearing glasses on the morning in question or whether Licensee's license indicated that Licensee was required to wear glasses while driving. *See* N.T. at 21.

Officer Agiedu of the Bensalem Police Department also testified on behalf of DOT. *See* N.T. at 22-31. Officer Agiedu explained that he was on duty on the morning of February 12, 2023, and that he came into contact with Licensee when he reported to Fisher's Tudor House, where Officer Rogozinski was already on scene. *See* N.T. at 23-24. Officer Agiedu testified that, when he initially spoke with Licensee, he observed that Licensee's speech and movement were both slow and lethargic. *See* N.T. at 24. He further observed that Licensee's face was red and his eyes were bloodshot. *See* N.T. at 24. He explained that Licensee took somewhat longer than normal responding to questions and producing requested documentation. *See* N.T. at 25. Officer Agiedu additionally explained that he administered field sobriety testing,[7] arrested Licensee for suspected DUI, and transported Licensee back to police headquarters. *See* N.T. at 25-30. Officer Agiedu testified that, once back at police headquarters, he read the entirety of the DOT DL-26B Form[8] verbatim

---

[7] The parties stipulated that Officer Agiedu administered field sobriety testing upon which the police rendered a determination that Licensee was incapable of safely operating a motor vehicle. *See* N.T. at 28-29.

[8] The DL-26B Form, entitled "Chemical Test Warnings and Report of Refusal to Submit to a Blood Test as Authorized by Section 1547 of the Vehicle Code in Violation of Section 3802," contains the following warnings:

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of blood.
>
> 3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18

to Licensee. *See* N.T. at 29-30; *see also* DL-26B Form, Commonwealth's Hearing Exhibit 2 of C-1. Licensee signed the line of the DL-26B Form acknowledging that he had been advised of the Implied Consent Warnings and verbally refused to consent to submit to the requested chemical testing by stating "I refuse." *See* N.T. at 31; *see also* DL-26B Form, Commonwealth's Hearing Exhibit 2 of C-1.

Licensee also testified before the Trial Court. *See* N.T. at 32-38. Licensee testified that on February 11, 2023, he drove home following a 14-hour work shift, showered, and decided to go out for a little fun. *See* N.T. at 33. Licensee drove some 60 miles to Fisher's Tudor House, a nightclub known to him where he had previously been multiple times. *See* N.T. at 33 & 35. Licensee explained that, when the night was over, he returned to his vehicle but was very tired from dancing for 3 hours after working a 14-hour shift, and was in no condition to drive. *See* N.T. at 33-35. As a result, Licensee explained that he chose to fall asleep in the car and so leaned over and went to sleep. *See* N.T. at 33-34. Although he conceded that he had consumed some drinks that evening, Licensee explained that he had chosen to fall asleep in his vehicle, and did not pass out. *See* N.T. at 37. Approximately 30 minutes later, Licensee awoke cold and shivering as the temperature that morning

---

months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

DL-26B Form, Commonwealth's Hearing Exhibit 2 of C-1. Officer Butch signed the DL-26B Form indicating that he had read the above warnings to Licensee and that Licensee had refused to sign the form. *See* N.T. 9/16/2021, Commonwealth's Exhibit 2; *see also* N.T. 9/16/2021 at 25.

10

was below freezing, so he pressed the button to start the car and set the heater to provide warmth. *See* N.T. at 34-35 & 37. Licensee explained that he had no intention of driving when he turned the vehicle on. *See* N.T. at 35. He further explained that he usually drives home and does not sleep in his car. *See* N.T. at 36.

Based on this evidence, the Trial Court concluded as follows in reference to the reasonable grounds upon which the police could conclude that Licensee had been operating a motor vehicle while under the influence of alcohol:

> [H]ere, Officer Rogozinski testified that he found [Licensee] in the driver's seat of his car slumped to the right and asleep, parked legally in the parking lot of a bar. The vehicle was running. When Officer Rogozinski woke [Licensee] up, [Licensee's] movements and responses were slow, and there was a strong odor of alcohol. He appeared "disoriented" and his speech was "mumbled and slurred." Further[, Licensee's] speech was "slow and lethargic" and his face was "red and [his] eyes were bloodshot." [Licensee] failed a Nystagmus test – a field test that tests eye movements while following a pen light – which Officer Agyedu [sic] believed was "a sign of impairment." [Licensee] also "unsatisfactorily" performed on the rest of the [field tests], and there was an indication of alcohol in his PBT. Most importantly, [Licensee] himself testified that he had been drinking and "was in no condition to drive."
>
> This [c]ourt finds that the above facts constitute reasonable grounds to believe that [Licensee] was in actual physical control of the movement of the vehicle while under the influence of alcohol. Therefore, [Licensee's] refusal of a chemical test properly resulted in the suspension of his driver's license, and this [c]ourt's reinstatement of the suspension was proper under the Commonwealth Court's precedent.

Trial Court Opinion at 9-10 (internal record citations omitted).

We find that the Trial Court erred by determining that the police had reasonable grounds to believe that Licensee was in actual physical control of the movement of his vehicle. The facts of this case are on all fours with those presented in the Supreme Court of Pennsylvania's decision in *Bold*. Police in *Bold* discovered a licensee on a dark and cold evening unconscious behind the wheel of his vehicle, which was legally parked in a mall parking lot near a bar. *See Bold*, 320 A.3d at 1187. The vehicle's headlights were on and the engine was running. *See id.* When awoken, the licensee appeared very intoxicated and admitted that he had been drinking. *See id.* He explained to the police that he had intended to sleep in the vehicle until he was fit to legally and safely drive home. *See id.* Despite conceding that they had no reason to suspect that the licensee had driven his vehicle while intoxicated, the police arrested the licensee, who later refused to consent to chemical testing. *See id.* DOT later suspended the licensee's license due to his refusal to submit to chemical testing. *See id.* The licensee appealed the suspension and the trial court sustained his appeal. *See id.* at 1188. DOT appealed to this Court, which reversed by a bare majority. *See id.* at 1189. The Supreme Court granted review and reversed the Commonwealth Court, holding that the conditions presented in *Bold* did not furnish reasonable grounds to believe that the licensee was operating or in actual physical control of the movement of his vehicle at the time of, or before, his interaction with police. *See id.* at 1188, 1201. After reviewing the Commonwealth's case law and the text of the Implied Consent Law, the Supreme Court quoted *Banner* to hold that,

> [i]n determining whether an officer had reasonable grounds to believe that a motorist was in actual physical control of a vehicle, the court must consider the totality of

12

the circumstances, including the location of the vehicle, whether the engine was running and whether there was other evidence indicating that the motorist had driven the vehicle at some point prior to the arrival of the police.

*Bold*, 320 A.3d at 1201 (footnote omitted).  Further quoting *Banner*, the Supreme Court continued to explain that

[t]his test must be applied in a fashion that honors the line we cited distinguishing circumstances where a motorist is driving his vehicle while under the influence of alcohol, which the statute is intended to prevent, and circumstances where a motorist is physically present in a motor vehicle after becoming intoxicated.

*Id.* (internal quotation marks, brackets, and footnote omitted).  The Supreme Court then reversed this Court, concluding:

Applying this principle to the present case, the outcome is clear.  The officer in question candidly admitted he had no reason to suspect that Bold had driven his vehicle while intoxicated, and he believed Bold's account that he intended to sleep off his intoxication in a running car warmed against the January chill.  This falls on the blameless side of the line we recognized in *Banner*.  The outcome must follow.

*Id.*

The facts of the instant matter are very similar to those presented in *Bold*.[9]  As in *Bold*, police discovered Licensee asleep in a running vehicle that was legally parked in a lot near a bar.  It was a dark and cold morning in mid-February.

---

[9] We observe that the Trial Court issued the Trial Court Order on December 20, 2023, and filed the Trial Court Opinion on June 28, 2024, both prior to the Supreme Court's issuance of the *Bold* decision on August 20, 2024.

Licensee admitted to drinking and indicated that he had decided to sleep in his car until he was in a condition where he could legally and safely drive home. Unlike in *Bold*, however, although the police described the speech and movement of Licensee – who they had awoken at 4 a.m. after drinking – as "slow" and "lethargic," neither officer described Licensee as "very intoxicated." Further, neither officer recalled the headlights of the vehicle being on, and one officer, after testifying that the vehicle was not revving, stated that he did not recall whether Licensee's foot had been on the vehicle's brake. The police did not testify that they witnessed Licensee drive his vehicle while intoxicated. In fact, Officer Rogozinski conceded that someone sleeping in a vehicle at that time of night and year would likely want their vehicle to be warmed up. Accordingly, the facts of the instant matter viewed as they appeared at the time, reveal a scenario where a motorist was merely physically present in a motor vehicle after becoming intoxicated. Accordingly, the Trial Court erred by determining that the police could have concluded that Licensee was operating the vehicle under the influence of intoxicating liquor and dismissing Licensee's appeal. *See Bold*; *Banner*.

## IV. Conclusion

For the above reasons, the Trial Court Order is reversed.

_____
CHRISTINE FIZZANO CANNON, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy Muehlen,               :
            Appellant      :
                          :
        v.                :
                          :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :   No. 64 C.D. 2024
Bureau of Driver Licensing      :

# **O R D E R**

AND NOW, this 12th day of June, 2025, the December 20, 2023 order of the Court of Common Pleas of Bucks County is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge